## SALLEE *vs.* WATERS.

1. The press and type of a practical printer, which are necessarily used by him and his journeymen in the publication of a weekly newspaper, are tools or implements of trade within the meaning of the statute exempting certain articles from levy and sale under execution.
2. But the paper and ink employed by a printer in his business are rather to be considered as stock in trade, and do not come within the purview of the statute.
3. The relation of parent and child, or husband and wife, with its consequent condition of dependence, is sufficient to constitute a family within the meaning of the statute, although the members of it may not live together or under the same roof.

Error to the Circuit Court of Butler. Tried before the Hon. Nathan Cook.

STONE & JUDGE, for the plaintiff.:

1. The statute exempts from levy and sale "tools and implements of trade" belonging to heads of families.—Digest, 210, § 47.

2. What are "tools or implements of trade," can never become a pure question of law, but is a question of fact for the jury, under the charge of the court. This court cannot presume that the printing press, &c. were tools or implements of trade. (In this record it is shown that Curtis was a printer, and that the press, type and materials were employed in printing a newspaper and job work; but it is not shown that the printing of a newspaper is a necessary part of a printer's trade, neither is it shown what is embraced in the trade or handicraft of printing. The defendant should have shown by proof, and the jury should

have found that the press, type, &c. were necessary tools of the trade of printing.  But more of this anon.)

3. The press, type, and all other furniture of a printing office are not implements of trade.  They go to make up a *business*— not a *trade*.  The intention of the Legislature must have been to protect such hand-articles as the operative mechanic or artisan employs in his daily labor, not the machinery, furniture, &c. of an extensive establishment.  The clear distinction is between a *trade* and a *business*.  That the exemption contended for contemplates a business,. and not a trade, we refer to the fact shown by the record that ink, paper, &c. are included in the schedule of articles.—Buckingham v. Billings, 13 Mass. 82; Daily v. May, 5 ib. 313—see, also, the reasoning ; Abercrombie v. Alderson, 9 Ala. 981.  (It certainly cannot be contended for a moment that a printing press and types and materials, no matter what their extent or value, are implements of trade, and exempt from levy and sale.  If this be so, the most extensive publication offices in the world are within the reservation.  The Harpers, it is understood, have a printing establishment worth half a million of dollars.  There are many other offices not much less valuable.  Even in this State many offices and their furniture, presses, &c. are worth ten thousand dollars, or more. Is an entire lucrative business of one man to be secured to him and his family, while no other pursuits are alike protected? Power presses, propelled by steam, are now employed in many offices—are the steam engines protected?  Moreover, if the press, types, materials, &c. are exempt on the principle that otherwise the printer could not support his family, does not the same rule exempt the house in which his works are put up? Without a house to work in, the press and type, &c. are wholly valueless.  If this be the principle, what limits shall we assign to its application?  As well may it be contended that all the manufacturing establishments of the country, and all their machinery are tools and implements of trade, including cotton factories, paper factories, iron foundries, wood shops, and even steamboats, wagons and teams used in transportation, &c.)

4. Printing presses, types, &c. are not usually owned by practical printers, any more than manufacturing machinery is owned by the operatives,—an additional reason why they should not be regarded as implements of trade.  (If it be ne-

cessary, we may safely contend that a practical printer has no implements or tools of trade, other than perhaps the composing stick. On the same principle, a professional weaver or foundry-man has no tools or implements of trade.)

5. Certainly it never could have been intended by the Legislature to make printers a privileged class above the rest of mankind. The utter inconsistency of such a principle with the general policy of our laws, is a powerful argument against the exemption contended for.

6. The case from Connecticut is not authority here, because in that State *implements of the household*—in other words *furniture*—are embraced in the statute, as well as " tools and implements" of trade.—4 Conn. 450. Neither is the case a well considered one, but the argument falls infinitely below the case in 13th Mass.

7. Was Curtis the head of a family? There must be both an aggregation of individuals and the relation of dependence. Here the latter existed, but not the former. He had no family, but the relation between Curtis and his child was precisely that of protector and protege. One of the constituents existed, but the other, *the family*, was wanting.—Allen v. Manassee & Mosely, 4 Ala. 554; Ladiga v. Rowland, 2 How. Sup. Ct. R. 581.

WATTS, for the defendant:

1. All *tools* or implements of trade by statute are free and exempt from levy and sale, to be retained by and for the use of every family in this State.—See Clay's Dig. 210, § 47.

2. There can be no doubt that Curtis, the defendant in execution, was a man of family. He had an infant child dependent upon him for support and maintenance. Where this relation subsists there is a family.—See Allen v. Manassee, 4 Ala. 554, and authorities there cited. The mere fact that the child did not live under the same roof with its father does not destroy the family relationship. If this were so, the sending of an only child off to school would destroy this relation.

3. The only other question is whether a printing press and types, and type stands, are tools or implements of trade within the meaning of the statute? This statute should be liberally construed. Printing is a mechanical employment: Curtis was a practical printer, worked daily at his trade—this was his only

means of support—and his printing press, types, &c. were the "tools or implements" of his trade.—Patton v. Smith, 4 Conn. 450. The exemption of our statute extends to all "tools or implements of trade." There is no restriction of amount or value.

4. The case cited from Massachusetts, (Buckingham v. Billings, 13 Mass.,) is upon the statute of that State, which is in many particulars different from ours. Under the Massachusetts statute *only such* tools of a debtor as are necessary for his trade or occupation, are exempt. Under this statute it might well be decided that only such press and types as were necessary to the printing business in its simplest form would be exempt, and the value of these might well be looked to.

5. In the Connecticut case cited, the reasoning of the Massachusetts judge is examined and declared to be untenable— the Connecticut statute is also different from ours. "Tools necessary for upholding life," &c., are exempt. Yet it has been decided in the case cited that printing presses, types, &c. are "tools" &c. and are exempt. If thus decided in Connecticut, *a fortiori* it ought to be held in Alabama that a printing press, &c. are "tools or implements of trade" and exempt.

6. What is said in Abercrombie v. Alderson, 9 Ala. 981, about tinner's tools not being exempt from levy and sale, has reference to the common law, as it was shown in the record that the case did not come within the statute, the defendant not having a family.

DARGAN, C. J.—This was a motion against the defendant as sheriff of Butler county for failing to make the money on an execution issued against James H. Curtis. A jury was empanelled to try the issue made up, whether the defendant could have made the money by proper diligence. They returned a special verdict, which shows that Curtis, the defendant in the execution, was a printer by trade, and during the time the execution was in the hands of the sheriff owned a newspaper establishment, consisting of a press, types, and other necessary articles and appendages for publishing and which he employed in the publication of a weekly newspaper; that Curtis worked at his trade himself and employed others to work and carry on said newspaper establishment; and that among the said publishing

materials there was no paper or ink, except such as were ne-
cessary in a printing office, and usually denominated printing
materials. The press, types, materials, &c. were valued at five
hundred dollars. The jury further found that Curtis had one
child dependant on him for a support, but that he had no wife,
nor did he keep house, but he and his child boarded at differ-
ent houses in the town of Greenville. Upon the foregoing
facts the jury agreed that if the law was in favor of the plaintiff
they then found in his favor, but if it was otherwise they found
for the defendant. The court decided in favor of the defend-
ant, whereupon judgment was rendered for him.

The defendant contends that these articles are not liable to
be sold by execution under the act of 1833, inasmuch as Cur-
tis was the head of a family. That act is in the following lan-
guage : "The following articles shall be retained by and for the
use of every family in this State, free and exempt from levy and
sale by virtue of any execution or other legal process; that is to
say, two cows and calves, two spinning wheels, two axes, two
hoes, five hundred weight of meat, one hundred bushels of corn,
all the meal on hand, two ploughs, one table, one pot, one oven,
two water vessels, two pair of cotton cards, all books, one churn,
three chairs, one work horse, mule, or pair of oxen, all imple-
ments or tools of trade," &c. Whether the court erred or not
depends on the construction that should be given to the words,
" all implements or tools of trade." In the case of Bucking-
ham v. Billings, 13 Mass. 82, the question arose whether a
printing press, types, &c. were liable to be sold under execu-
tion according to the laws of Massachusetts, which exempts
from levy and sale " the tools of a debtor necessary for his trade
or occupation." Chief Justice Parker, in delivering the opin-
ion of the court, said, "It was not to be supposed that it was
intended to comprehend within the term tools, which are pro-
perly small articles used by the hand, complicated machinery or
expensive utensils, which may of themselves be of great value.
There are machines now used in manufactures which may as
well be denominated tools as the apparatus of a printing office,
and yet it cannot be supposed that the Legislature intended to
exempt them from attachment and thus to enable a debtor to
hold a large capital which cannot be reached by his creditors."
In the case of Patton v. Smith, 4 Conn. 450, the question arose

whether a printing press, types, &c. were exempted from levy and sale under the act of Connecticut, which exempts all tools necessary for the upholding of life; the court dissented from the reasoning employed in the case of Buckingham v. Billings, *supra*, and held that the press and types were not liable to levy and sale. The reasonings of the courts in the two cases refered to are irreconcilable and lead to directly contrary results. We therefore must determine for ourselves, without regard to the decision in either case.

It is to be regretted that the framers of our laws do not (if by possibility it can be done) use more definite and precise language to convey their meaning and intention. Trade, for instance, in its common acceptation may signify the business that one pursues, whether it be in buying and selling, or whether it be any of the mechanic arts. So manufacturing may be said to be a trade, and without violence to language, the machinery necessary to carry it on may be said to be the implements of that trade. Yet it will not be contended that the statute intended by the term tools or implements of trade to exempt costly machinery from the payment of the debts of the owner; if so, a debtor worth a large capital may set his creditors at defiance; indeed he may be wealthy, yet the law could not compel him to pay his debts. I see and feel the difficulty in laying down a principle by which we can determine what shall be considered in all cases implements or tools of trade, unless we take the words in their broadest sense, but that construction would lead to results, in my opinion, entirely beyond the design and intention of the law. It would exempt property of great value under the denomination of implements of trade, and might leave the debtor in possession of wealth. This I cannot believe was intended by the use of the terms, *tools or implements of trade*. In the case of Ritchie v. McCauly, 4 Barr. 471, it was held that the printing or stamping blocks of an oil-cloth painter, worth from a thousand to fifteen hundred dollars, were not the necessary tools of a tradesman, within the meaning of the act of Pennsylvania. Yet it was conceded in that case that the occupation of a painter of oil-cloth was a trade and one engaged in it a tradesman within the meaning of those terms; and it is evident that the blocks used in stamping the oil-cloth were necessary to carry on the trade with success. This authority I

think applicable to the case before us, and shows that the use of the terms, tools and implements of trade, are not to be taken in their most extended signification. But to limit them is the difficulty. My own opinion, however, is that we should look to the character or nature of the trade in determining whether the articles claimed to be exempt can be considered as tools or implements. If the trade or occupation is usually carried on with machinery, apparatus, or implements of great value, we may then reasonably conclude that the Legislature did not intend to exempt such from levy and sale. If this be not the proper construction of those terms, we must hold that the Legislature intended to permit a particular class of tradesmen to enjoy the use of property that may yield a large annual income, although they may be involved in debt. A printing press and types may be of the value of several thousand dollars; the business may be profitable and give employment to many; the owner may be an editor as well as a practical printer; and if such property be not subject to levy and sale, we may leave him in independent circumstances, whilst his creditors are put at defiance. Such property, in my opinion, was never intended to be included by the Legislature when they used the terms, tools and implements of trade. A majority of the court, however, think otherwise. They hold that as printing is a trade and a press and types are indispensably necessary in following or conducting it, they are to be considered as implements of trade, and consequently not subject according to the facts of this case to levy and sale. We all, however, agree that the judgment must be reversed, for it appears that Curtis had paper and ink in possession during the time the execution was in the hands of the sheriff, and we cannot think that by any construction such articles can be included by the terms, tools or implements of trade. They are rather stock in trade, than the implements or tools of trade.

As to the question whether Curtis was the head of a family, we think it clear that he was. To constitute a family within the meaning of the act, the relation of parent and child, or that of husband and wife, must exist; there must be a condition of dependence on the one or the other of these relations; but it is not necessary that all the dependents should live under the same roof, or that the family should live together; it is the relation and the dependence on that relation, not the aggregation of the

individuals, that constitutes a family.—Abercrombie v. Alderson, 9 Ala. 981; Allen v. Manassee & Mosely, 4 Ala. 554.

Let the judgment be reversed and cause remanded.

CHILTON, J.—The Legislature has not thought proper to distinguish between different trades, or to say that the tools or implements of one trade and not of another should be exempt, or that these tools or implements shall not exceed a certain value, but the language is general and exempts the tools and implements of all tradesmen. If then, being called upon to construe this general language, we should engraft exceptions and say the blacksmith is within the exception, but the printer, who is confessedly a tradesman, is not, we should usurp the powers of the Legislature and in effect make the law, rather than construe it. This law was conceived and enacted in the most benevolent policy and should recieve a liberal construction, and the case of Buckingham v. Billings, in 13th Mass. has since been departed from so far as it holds a different doctrine by the same court, in 15th Mass. and 10th Metc. Rep. If under this exemption persons should attempt a fraud on the statute and seek to shelter a large amount of property under its provisions, we should protect the statute against such abuse and construe it according to its manifest design, which was to furnish the tradesmen of the country the means of supporting their families by exempting from levy and sale the tools and implements of their trade. When a printer seeks to exempt several presses and corresponding type, or more presses than one, then we will look into the argument of the Chief Justice, which furnishes such illustrations. In this case there was but one press, and suitable type, &c. for working it. Take it from the printer and you turn him out a tradesman without the tools and implements of his trade. I see no difference in principle between an officer's levying upon a hammer in the hands of the blacksmith, the plane in the hands of the carpenter, or the composing stick and type in the hand of the printer. They are all tools and implements of trade, and the statute declares *all tools and implements of trade* are exempt. The argument of the Chief Justice, drawn *ab inconvenienti*, in a doubtful case would be valuable, but as opposed to a plain statute does not satisfy my mind that we should be justified in departing from it and in substituting, as I

32

think would be the effect of a contrary decision, in lieu of the statute, judicial discretion—a most unstable and unsafe guide in the administration of justice. This hasty sketch of my views will serve to show the reasons upon which I predicate my conclusion.