**In re Rickey HARRELL and Joyce Ann Harrell, d/b/a Weiss Lake Produce, Debtors.**

**Bankruptcy No. 86–3748(7).**

United States Bankruptcy Court, N.D. Alabama.

March 31, 1987.

Jack W. Torbert, Jr., Gadsden, Ala., for the debtor.

David C. Wear, Fort Payne, Ala., for First State Bank of DeKalb County.

## MEMORANDUM OPINION AND ORDER ON MOTION TO AVOID FIXING OF A LIEN

L. CHANDLER WATSON, JR., Bankruptcy Judge.

The above-styled case is before the Court on the motion of the debtors to avoid the fixing of a lien by First State Bank of DeKalb County (First State Bank) on a 1976 model Chevrolet pickup, pursuant to 11 U.S.C. § 522(f)(2)(B). Upon due consideration thereof, the Court finds that the motion is due to be denied.

*Findings of Fact —*

On May 13, 1986, the debtors filed a petition for relief under the provisions of title 11, United States Code, chapter 7. In the schedules accompanying the petition, the debtors listed as exempt certain personal property, including the 1976 model Chevrolet pickup that is the subject of the present motion.

First State Bank filed proof of a secured claim against the debtors. Attached to the proof of claim were the following exhibits:

1. A copy of a State of Alabama Certificate of Title issued August 22, 1984, for one 1976 model Chevrolet automobile, purchased May 28, 1983, with a first lien held by First State Bank;

2. A copy of a State of Alabama Certificate of Title issued November 7, 1984, for one 1976 model Chevrolet pickup, purchased October 22, 1984, with a first lien held by First State Bank; and

3. A copy of a form entitled "Promissory Note, Security Agreement and Truth-in-Lending Disclosure" in the principal amount of $4,184.62, executed by the debtors and in favor of First State Bank on November 2, 1984, listing a security interest in one 1976 model Chevrolet automobile and one 1976 model Chevrolet pickup.

One line of the note and security agreement, located in the upper left-hand corner of the form, contained a blank space for the entry of a "renewal number". What appear to be three separate series of numbers were entered in the space. Additionally, the document had been stamped with what appear to be the words "Paid By Renewal—First State Bank, Fort Payne, Alabama." However, at the top of the document appeared the handwritten words, "Stamp in Error—E.D."

On July 31, 1986, the debtors filed a motion to avoid First State Bank's security interest in the truck. The motion alleged that the truck is a "tool of the debtors' trade" and that although First State

Bank's security interest "may have previously constituted a purchase-money security interest [it] lost its purchase-money status through various renewals and [the] combining of said note with other notes owed by the debtors to First State Bank."

First State Bank objected to the debtors' motion on grounds that the truck does not qualify as a tool of the trade and that the truck is not subject to a claim of exemption under Alabama law.

A hearing was held on the debtors' motion on September 10, 1986. The debtor Joyce Ann Harrell testified at the hearing that the truck had been purchased by the debtors during the "first part" of 1984, at which time First State Bank was given a security interest therein. Mrs. Harrell testified that a note which was executed by the debtors in favor of First State Bank at the time the truck was purchased was subsequently renewed and consolidated with other notes "one or two times," that a Chevrolet Monte Carlo was pledged as additional security for the renewed or consolidated loan, and that the original note for the truck was never completely paid off.

With regard to the use of the truck in connection with the debtors' trade, Mrs. Harell testified that at the time the truck was purchased, the debtors were not engaged in the business of selling produce, but that at the time of the filing of their chapter 7 petition, the debtors' primary business was selling produce. According to Mrs. Harrell, she and her husband were both employed as of the date of the hearing on their motion; at that time, they used the truck twice each week to obtain produce which they would sell from the truck on the side of the road on weekends and holidays.

Apart from Mrs. Harrell's testimony, the debtors offered no evidence, at the hearing or otherwise, of the transaction or transactions involving a consolidation of loans or a renewal of the original note and security agreement granting to First State Bank a purchase-money security interest in the truck.

*Conclusions of Law* —

Pursuant to 11 U.S.C. § 522(f)(2)(B), a debtor may avoid a creditor's nonpossessory, nonpurchase-money security interest in tools of the debtor's trade to the extent that such lien or security interest impairs an exemption to which the debtor would otherwise have been entitled.[1] The question before the Court is twofold: whether First State Bank's security interest in the debtors' truck is a purchase-money security interest and, if so, whether the truck may properly be classified as a tool of the debtors' trade.

In defining a purchase-money security interest, the Uniform Commercial Code, as adopted in Alabama, provides in pertinent part as follows:

A security interest is a "purchase money security interest to the extent that it is:

(a) Taken or retained by the seller of the collateral to secure all or part of its purchase price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Ala.Code § 7–9–107 (1975).

The note and security agreement in the present case indicates on its face that there were at least three transactions between the debtors and First State Bank prior to November 2, 1984. It also appears that the balance of the indebtedness arising from the prior transactions was consolidated by virtue of the transaction of November 2, 1984. It is also likely, though impossible to ascertain from the record in this case, that the consolidation of the prior indebtedness was not the sole purpose of the November 2, 1984 transaction.

Thus, even if, through some transaction prior to November 2, 1984, the debtors obtained from First State Bank a loan

---

1. Subsection (A) of 11 U.S.C. § 522(f) likewise permits a debtor to avoid liens in household goods, furnishings, etc. This Court has previously held that an automobile does not qualify as "household goods" for purposes of § 522(f). *In re Yokely*, 42 B.R. 574 (Bankr.N.D.Ala.1984).

for the purpose of buying the truck at issue, if the proceeds from such a loan were used to purchase the truck, and if First State Bank thereby obtained a purchase-money security interest in the truck, the Court finds that the purchase money aspect of the security interest has been extinguished, as it is apparent that the truck now secures something more than its purchase price. *See, SouthTrust Bank of Alabama, N.A. v. Borg-Warner Acceptance Corp.*, 760 F.2d 1240 (11th Cir.1985); *In re Manuel*, 507 F.2d 990 (5th Cir.1975). In reaching this conclusion, the Court notes that according to the certificate of title, the truck was purchased on October 22, 1984. The Court finds it highly unlikely that any note executed by the debtors in obtaining a loan for the purpose of buying the truck would have been renewed three times between the date of such loan and November 2, 1984. In addition, the Court finds significant the fact that in objecting to the debtors' motion, First State Bank does not allege that it has a purchase-money security interest in the truck.

First State Bank objects to the debtors' motion on grounds that the truck does not constitute a "tool of the trade" as that term is used in § 522(f)(2)(B), and that the truck would not be subject to a claim of exemption under Alabama law. Taking First State Bank's contentions in reverse chronological order, the Court finds that as a general proposition, the debtor Rickey Harrell would be entitled to claim as exempt his interest in the truck, up to the value of $3,000.00, pursuant to § 6–10–6, Code of Alabama (1975);[2] that section exempts from levy and sale each resident's interest in personal property, to the extent of $3,000.00 in value.

The Court having found that First State Bank's security interest in the debtors' truck is a nonpurchase money security interest, and that the creditor's lien impairs an exemption to which the debtors would have been entitled, the sole remaining question is whether the truck qualifies as a "tool of the debtors' trade" for purposes of lien avoidance under § 522(f) of title 11. Numerous courts have addressed the question of whether an automobile can be a tool of a trade under that statute; all such courts have not arrived at the same conclusion. *See, In re Weinstein*, 44 B.R. 987 (Bankr.E.D.Penn.1984) (automobile is a tool of the trade if necessary for and used by the debtor in carrying on a trade); *In re Schneider*, 37 B.R. 747 (Bankr.N.D.Ga. 1984) (traveling salesman's automobile is a tool of his trade). *But see, In re Nowak*, 48 B.R. 290 (W.D.Wis.1984) (automobile cannot be considered a tool of trade); *In re Trainer*, 56 B.R. 21 (Bankr.S.D.Tex.1985) (truck is not a tool or apparatus of a trade); *In re Alloway*, 34 B.R. 423 (Bankr.S.D.Ore. 1983) (a lien on an automobile cannot be avoided under § 522(f)(2)(B). This Court has previously held that a pickup used for the sole purpose of transporting the debtor to and from work is not a tool of the trade within the meaning of § 522(f)(2)(B). *In re Parker*, 40 B.R. 490 (Bankr.N.D.Ala.1984). The Court presently goes one step further and finds that an automobile cannot qualify as a tool of the trade under that section, for reasons set forth herein.

When read in conjunction with § 522(d), which sets forth the federal exemption scheme, it seems obvious to this Court that the "tool of the trade" language found in § 522(f)(2)(B) was not intended by Congress to include automobiles. Section 522(f)(2)(B) provides that a nonpossessory, nonpurchase-money security interest in "implements ... or tools, of the trade of the debtor" may be avoided "to the extent that such lien impairs *an exemption to which the debtor would have been entitled* ...." (Emphasis added). The specific exemptions to which a debtor is entitled arise from either § 522(d) or applicable state law, depending on such law or the debtor's choice. 11 U.S.C. § 522(b). Section 522(d)(2) authorizes an exemption of the debtor's interest, not to exceed a specific value, in one motor vehicle, while § 522(d)(6) provides that the debtor may

---

**2.** By virtue of Ala.Code § 6–10–11 (1980), Alabama has "opted out" of the federal exemption scheme set forth in 11 U.S.C. § 522(d). The Alabama exemption statute, § 6–10–1 *et seq.*, does not confer a right of exemption in tools of the trade, as such.

also exempt his interest, to a certain value, in tools of his trade; these two subsections, taken together, would seem to indicate that Congress viewed automobiles as being objects which are separate and distinct from tools of a trade.

In a similar vein, the word "tool", as it is customarily used, generally connotes a manually-operated device, such as a carpenter's hammer or a mechanic's wrench; it is not a word which is commonly used to refer to an automobile or motor vehicle. If Congress had intended to authorize the avoidance of liens in any item which a particular debtor may use in conducting his trade or occupation, even though such item is not generally regarded as a "tool", it is the opinion of this Court that Congress would not have utilized the term "tools of the trade" in § 522(f)(2)(B). It would have been no more difficult, in drafting that subsection, to have referred to "objects" or "items" used in carrying on the debtor's trade, had such a broad interpretation been intended.

■ The legislative history of § 522 is indicative of the spirit in which the lien avoidance provision of that section was enacted. The primary purpose of that section was to prevent overreaching by creditors who take a security interest in the kinds of items specified in § 522(f)(2) in order to coerce the debtor, by threatening to repossess the collateral, into making the scheduled payments to the creditor. Congress recognized that such items of collateral are, by their nature, necessary for the debtor's fresh start, that they generally have very little resale value, and are thus practically worthless in the hands of the creditor, but that the cost to the debtor in replacing them would be quite high. Congress pointed out that creditors rarely repossess such types of collateral and that from the creditor's standpoint, the property is valuable only as long as it is in the debtor's hands. *See*, H.Rep. No. 95–595, p.

126–127, 95th Cong.2d Sess. (1987), U.S. Code Cong. & Admin.News 1978, p. 5787.

■ In light of the legislative history of § 522(f), it is doubtful that Congress intended to authorize the avoidance of liens in items such as automobiles. It is the opinion of this Court that Congress intended, instead, that the lien avoidance right apply only to property of relatively insignificant value.[3] This conclusion is further supported by § 522(d)(6), which places a $750.00 ceiling on the value of the debtor's interest in implements or tools of the trade which may be exempted under the federal scheme. While a $750.00 exemption could sufficiently cover the value of the debtor's interest in a number of small hand tools, it often would not begin to cover the interest of a debtor in an automobile. *In re Trainer*, 56 B.R. 21, 23 (Bankr.S.D.Tex.1985).

■ Based on the foregoing, the Court finds that the debtors are not entitled to avoid the lien of First State Bank in the truck, as a truck does not constitute a "tool of the trade" within the meaning of 11 U.S.C. § 522(f)(2)(B). An appropriate order will be entered.

---

**3.** The Supreme Court has not addressed the question of whether lien avoidance pursuant to § 522(f) is constitutional, in light of the Fifth Amendment prohibition against taking private property without compensation. *See, United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982).