**In the Matter of Irma E. HINTZ, Debtor.**

**In the Matter of Ronald C. FOTH and Joan Foth, Debtors.**

**Bankruptcy Nos. 87–03084, 87–02581.**

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 28, 1988.

Terrence J. Byrne, for debtors.

Maxine A. White, Asst. U.S. Atty., for the U.S. (FmHA).

Before CLEVERT, Chief Judge, SHAPIRO, EISENBERG and McGARITY, Bankruptcy Judges, and IHLENFELDT, Senior Bankruptcy Judge.

## DECISION

DALE E. IHLENFELDT, Senior Bankruptcy Judge:

The debtors are Wisconsin dairy farmers who have a reasonable hope of continuing with their farming. Ronald and Joan Foth are married; Irma E. Hintz's husband is deceased. In each case, the debtors have filed petitions under chapter 7 of the Bankruptcy Code and have moved under § 522(f)(2)(B) to avoid nonpossessory, nonpurchase-money security interests in farm machinery and cattle which they have claimed exempt pursuant to Section 815.-18(6) of the Wisconsin statutes. The Farmers Home Administration (FmHA) holds the security interests in question by virtue of several outstanding loans to the debtors. FmHA opposes the debtors' motions.

The two cases have been submitted on agreed statements of fact. The debtors concede that FmHA holds a valid nonpossessory, nonpurchase-money security interest in all of the personal property that is the subject of their motions, and FmHA concedes for purposes of these cases that all of the farm machinery in question may be claimed exempt under § 815.18(6).[1]

Section 815.18(6) exempts:

(6) LIVE STOCK, FARM IMPLEMENTS AND AUTOMOBILE. Eight cows, 10 swine, 50 chickens, 2 horses or 2 mules, one automobile of the debtor not exceeding $1,000 in value, 10 sheep, and the wool from the same, either in the raw material or manufactured into yarn or cloth; the necessary food for all the stock mentioned in this section for one year's support, either provided or growing or both, as the debtor may choose; also one wagon, cart or dray, one sleigh, one plow, one drag, one binder, one tractor not to exceed in value the sum of $1,500, one corn binder, one mower, one springtooth harrow, one disc harrow, one seeder, one hay loader, one corn planter, one set of heavy harness and other farming utensils, also small tools and implements, not exceeding $300 in value.

In claiming their exemptions, the debtors rely on *In re Erickson*, 815 F.2d 1090 (7th Cir.1987) which held that a baler was a "hay loader" and a haybine was a "mower" within the meaning of § 815.18(6), and that they could therefore be claimed as exempt under that statute. The items of personal property to which the debtors' motions are directed, the debtors' estimate of their value and the Wisconsin statutory term upon which each claim of exemption is based are as follows:

### RONALD C. FOTH and JOAN FOTH

| | Value | Item | Statutory Term |
|---|---|---|---|
| 1. | $ 700. | John Deere B. Tractor | Tractor |
| 2. | 2,200. | Gehl 750 Forage Chopper with 2 row corn head and P.U. | Corn binder |
| 3. | 500. | New Holland Super Hayline 68 Baler | Hayloader |
| 4. | 100. | Hesston PT–10 mower conditioner | Mower |
| 5. | 400. | Bradford 165 Gravity wagon | Wagon |
| 6. | 100. | J.D. 30–7' Pull Type combine | Binder |
| 7. | 150. | Allis Chalmers 3–14" Plow | Plow |
| 8. | 800. | J.D. 14' disc | Disc harrow |

1. Debtors in Wisconsin may elect to claim the exemptions that are listed in § 522(d) of the Bankruptcy Code, or they may claim the exemptions allowed under state law. No issue remains with respect to FmHA's security interest in the debtors' cattle, inasmuch as the parties have agreed, in each case, that two cows will be deemed to be animals held primarily for the personal or family use of the debtors and that FmHA's lien may be avoided as to those cattle under § 522(f)(2)(A) of the Code. In addition to the facts as agreed to by the parties, the debtors have offered to introduce evidence intended to show that the granting of their motions will not increase the cost of credit to farmers or make it more difficult for farmers to obtain credit.

| | Value | Item | Statutory Term |
|---|---|---|---|
| 9. | $25. | J.D. 490 4–row corn planter | Corn planter |
| 10. | 50. | VanBrunt grain drill | Seeder |
| 11. | 50. | J.D. 10' Drag | Drag |
| 12. | 200. | Cultipacker | Disc |
| 13. | 75. | Air Compressor | Misc. tools |
| 14. | 100. | Cultivator | Misc. tools |
| 15. | 1,200. | Allis Chalmers D–15 series 2 tractor | Tractor |
| 16. | 400. | Lundell Gravity wagon | Wagon |
| 17. | 700. | Ford 14' chisel plow | Plow |
| 18. | 50. | Ford 10' drag | Drag |
| 19. | 50. | Massey Harris 7' hay mower | Mower |
| 20. | 200. | Gehl 83 Forage chopper with 1 row corn head and P.U. head | Corn binder |
| 21. | 200. | Manure loader | Misc. tools |
| 22. | 250. | Misc. small tools, equipment and supplies | Misc. tools |
| 23. | 50. | Welder | Misc. tools |

### IRMA E. HINTZ

| | Value | Item | Statutory Term |
|---|---|---|---|
| 1. | $4,000. | Farmall 656 diesel tractor w/Freeman loader ($1,500) | Tractor |
| 2. | 800. | Kverneland 4–16" plow | Plow |
| 3. | 1,000. | Rex self-unloading wagon | Wagon |
| 4. | 50. | 4–Sec. drag | Drag |
| 5. | 300. | Gehl FH–83 chopper w/corn head | Corn binder |
| 6. | 600. | NH 461 mower-conditioner | Mower |
| 7. | 150. | 10' wheel disc | Disc |
| 8. | 200. | JD 8' grain drill | Seeder |
| 9. | 800. | NH 273 baler | Hayloader |
| 10. | 200. | IHC 4–row corn planter | Corn planter |
| 11. | 200. | Pittsburg field cultivator | Springtooth |
| 12. | 100. | Wagon | Misc. tools |
| 13. | 200. | H & S loading rack | Misc. tools |

---

Section 522(f) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

The sole issue in these cases is whether the debtors may utilize § 522(f)(2)(B) to avoid FmHA's lien on the farm machinery listed above.

Section 522(f)(2)(B) was recently examined by the court of appeals for this circuit in the case of *In re Patterson*, 825 F.2d 1140 (7th Cir.1987). As in this case, the debtors in the *Patterson* case were Wisconsin dairy farmers, but they had elected to claim their exemptions under §§ 522(d)(5) and 522(d)(6) of the Bankruptcy Code. Section 522(d)(6) allows a debtor to exempt the debtor's "aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor."

Cows and a tractor that were claimed exempt by the debtors were sold at auction. The auction netted $24,600, with the tractor accounting for $4,300 of that amount. The

debtors combined the "tools of the trade" exemption of § 522(d)(6) with the wild card provision in § 522(d)(5) and claimed $17,300 of the proceeds of the auction as exempt. Contending that the cows and tractor sold at auction were tools of the trade as provided in § 522(f)(2)(B), they then moved to set aside a bank's lien to the extent of $17,300 of the proceeds of the auction.

The court ruled in *Patterson* that the cows and the tractor were not "tools of the trade" such as would qualify for exemption under § 522(d)(6). The court said that it would do particular violence to the English language to regard cows as "tools of the trade," and although "the question [was] a close one," the tractor was also not an implement or tool of the trade within the "statutory sense" of § 522(d)(6).

Noting that the $750 aggregate limitation contained in § 522(d)(6) provided guidance in determining Congress' intent as to the meaning to be ascribed to the words "implements" and "tools of the trade," the court said:

> The purpose of the tools of the trade exemption is to enable an artisan to retain tools of *modest* value so that he is not forced out of his trade. (p. 1146) (emphasis added)

> The tractor is not a modest implement but an expensive piece of machinery. It is one of the principal capital assets of a small farm. To exempt it would be like exempting the airplanes owned by an air charter service. This can't have been what Congress had in mind in allowing an exemption limited to $750. The relevant tools of the trade are the rakes and other hand tools that Mr. Patterson continues to own, and to use as a dairy hand following the bankruptcy. (p. 1147)

Although the cows and tractor did not qualify for exemption as "tools of the trade" under § 522(d)(6), the court noted that they could be claimed exempt under the wild card provision of § 522(d)(5), *In re Smith*, 640 F.2d 888 (7th Cir.1981).

The court next turned its attention to the lien avoidance provisions of § 522(f)(2)(B). The wild card exemption entitled the debtors to exempt $15,800 of the auction proceeds, and unlike § 522(d)(6), § 522(f)(2)(B) permits the avoidance of liens on exempt property without specifying a limitation of any kind as to dollar amount. The only terms in the nomenclature of § 522(f)(2)(B) that might conceivably be applied to the cows and tractor, however, were "implement" and "tool of the trade," and the court had already ruled that they did not qualify as such. The court said, "Since cows and tractors are not tools of the trade, a lien on them can't be avoided by virtue of 522(f)(2)(B)."

Appellate courts in other circuits have approved the avoidance of liens on farm machinery under § 522(f)(2)(B). *Patterson* cites the cases of *In re LaFond*, 791 F.2d 623 (8th Cir.1986) and *In re Liming*, 797 F.2d 895 (10th Cir.1986). In *LaFond*, farming equipment [2] was claimed exempt under §§ 522(d)(5) and (6).[3] The court specifically rejected the creditor's argument that large items of farm equipment may not be considered "implements" or "tools of the trade" for purposes of § 522(f)(2)(B). In the case of *In re Liming*, 797 F.2d 895 (10th Cir.1986), the court affirmed the avoidance under § 522(f)(2)(B) of a lien on a $30,000 farm tractor that had been claimed exempt under state law.

If *Patterson* provides answers to the problems in the cases at bar, then the decisions in *LaFond* and *Liming* can be of only

**2.**

| | |
|---|---|
| $ 5,500. | John Deere tractor |
| 350. | John Deere 4–bottom plow |
| 2,100. | Haybine |
| 200. | Oliver 11' disk |
| 350. | John Deere corn planter |
| 750. | Silage box and wagon |
| 400. | 6 ton wagon with rack |
| 400. | John Deere chopper |
| 250. | Fox forage blower |
| 100. | Kovar 4–section harrow |
| 75. | Cylinder and hoses |
| $10,475. | Total |

**3.** Finding of Fact 14, *In re LaFond*, 45 B.R. 195, 198 (Bankr.Minn.1984).

academic interest here. This court is bound to follow the decisions of the Court of Appeals for the Seventh Circuit. *Patterson,* however, a subject of much discussion among members of the bankruptcy bench and bar in Wisconsin, has produced a wide divergency of opinion regarding its import or impact.

It is one thing to compare the status of a $4300 tractor on a dairy farm with an airplane of an air charter service as the *Patterson* court did (p. 1147), but how should the court view a farm implement worth less, sometimes substantially less? Many dairy farms in Wisconsin have farm implements that are worth something less than $750—implements that are old but not obsolete, used but still useful, and that are in fact being used to operate the farm. In the motions before the court, for example, 20 of the 23 Foth implements (including a $700 John Deere B. tractor) and 9 of the 13 Hintz implements are valued at less than $750.

Referring to the § 522(d)(6) implement and tools of the trade exemptions, *Patterson* states repeatedly that Congress intended these to apply to "tools of *modest* value" or "personal hand tools of *modest* value," and the decision distinguishes between tools and implements of that type, and the "capital assets" of a farm. The debtors argue that the scope of § 522(d)(6) and that of § 522(f)(2)(B) are not necessarily co-extensive, and they point to the court's statement,

> The same language in section 522(f), since it could be picking up a tools of the trade exemption in state law as well as the tools of the trade exemption (which need not have the same scope) in 522(d), could mean two different things. (p. 1146)

■ The question is whether Congress, in using the terms "implements" and "tools of the trade" in the two sections, intended that their meaning be limited in the one section to "tools of modest value" such as "rakes and other hand tools," and that their meaning then be expanded in the other section to include what *Patterson* refers to as capital assets. The *Patterson* court, of course, did not need to and did not decide this question, but we do not believe the court's reasoning and approach would permit that result. The Patterson court looked to § 522(d)(6) for a federal definition of tools of the trade and then applied that same definition to the term, "tools of the trade," as contained in § 522(f)(2)(B).[4] We therefore respectfully differ with the decision in *In re Duss,* 79 B.R. 821 (Bankr.W. D.Wis.1987) which we believe interpreted the terms "implements" and "tools" far more expansively than *Patterson* allows. We note with interest in the *Erickson* case, wherein a bank had a lien on farm implements and the parties agreed the debtor could keep as an 'implement' or 'tool of the trade' any asset mentioned in Wis.Stat. § 815.18(6), the court's comment that "We need not and do not decide whether the agreement was provident."

In the recent case of *In re Taylor,* 73 B.R. 149 (Bankr.App.9th Cir.1987), the court approved the avoidance of a creditor's interest in a $52,000 logging truck and trailer which had been pledged as security in the $120,000 refinancing of the debtor's logging operations and which had been claimed exempt under Montana's tool of trade exemption statute. Congress surely could not have expected or intended that this statute would be applied in such devastating fashion.

There is an additional reason why § 522(b)(2)(B) ought not to be applied in the manner sought by the debtors. Much of the extant farm credit consists of government loans. As pointed out by the government, construing § 522(f) to allow lien avoidance on all farm equipment covered by state exemptions without regard to value or other limitation of any kind will preclude a fair and uniform administration of

---

**4.** The meaning of a provision of the Bankruptcy Code may be ascertained by looking to another provision of the Code that uses the same termi-

nology. *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

federal farm credit programs. It could also have the effect of substantially diminishing access to farm credit programs for farmers who have only their existing equipment to offer as collateral in states with generous exemption statutes.

 If it follows from *Patterson*, as we believe, that § 522(f)(2)(B) does not apply to capital assets, the court must perforce venture next into the difficult and gray area of deciding what is a capital asset. *Patterson* dealt with one $4300 tractor. It held that the tractor was not the modest implement that Congress sought to protect. The court said, "The tractor is not a modest implement but an expensive piece of machinery. It is one of the principal capital assets of a small farm."

In the cases now before this court, most of the farm implements in question, among them a tractor, are of much less value, and it is conceded that all are exempt under § 815.18(6) of the Wisconsin Statutes. Nevertheless, Foths' implements, all or most of which are presumably needed and used to operate their dairy farm, have a total value of $8,350, while the Hintz implements total $8,600 in value. Even though most of the farm implements here in issue are individually of modest value as compared to the tractor in the *Patterson* case, we believe that taken together they are in fact the debtors' capital assets. If the court's ruling in *Patterson*, that the "relevant tools of the trade are the rakes and other hand tools," is used as a criterion, the great majority of these do not qualify for lien avoidance under § 522(f)(2)(B).

The Foths' motions, using the language of the Wisconsin statute, describe as "Misc. tools:"

13. Air compressor
14. Cultivator
21. Manure loader
22. Misc. small tools, equipment and supplies
23. Welder

In the same way, the Hintz motion lists:

12. Wagon

13. H & S loading rack

Other than as provided in the listings set out earlier, we do not have any particulars concerning the nature or usage of these items, but they are described as tools and (although the Foths' $675 total exceeds the statutory limitation of $300 per person by $75) by agreement are exempt as such. On the record as presented, the motions under § 522(f)(2)(B) will be granted as to these items. The motions will be denied as to the other listed items.