**In re Eddie BULGER, Minnie Bulger, Debtors.**

**Bankruptcy No. 87–02608–APG.**

United States Bankruptcy Court, M.D. Alabama, E.D.

July 1, 1988.

Opinion on Motion to Avoid Security Interest July 19, 1988.

Cody W. Foote, Opelika, Ala., for movant.

Cecil M. Tipton, Opelika, Ala., trustee.

## ORDER AVOIDING
## SECURITY INTEREST

A. POPE GORDON, Bankruptcy Judge.

In accordance with an opinion to be entered in this case in this matter, the court finds that the creditor, Rice Acceptance Company, has a security interest in a 1965 International truck, Model 1200, of the debtor, which is the kind of property (see 11 U.S.C. § 522(f)(2)(A)(B) and (C)) on which such a lien may be avoided. That security interest is a nonpossessory and nonpurchase-money security interest and impairs an exemption to which the debtor would have been entitled. Therefore, it is

ORDERED that the motion is granted and that the security interest of the creditor, Rice Acceptance Company, in the 1965 International truck, Model 1200, is declared void to the extent that such lien impairs the personal property exemption of the debtor claimed and allowed in these proceedings.

## OPINION ON MOTION TO AVOID
## SECURITY INTEREST

Pursuant to Rules 4003(d) and 9014, Bankruptcy Rules, the debtor filed a motion to avoid the nonpossessory, nonpurchase-money security interest of a creditor on the debtor's 1965 International truck, Model 1200, valued at $500, under 11 U.S.C. § 522(f)(2). The truck is used by the debtor in his pulpwood hauling business and is necessary to the business.

Under 11 U.S.C. § 522(f)(2), a debtor may avoid a nonpossessory, nonpurchase-money security interest in property of the kind included in subsections (A), (B), or (C) to the extent that it impairs an exemption to which the debtor would otherwise be entitled. Thus, to avoid a nonpossessory, non-purchase-money security interest the property must pass two tests: (1) the property must be exempt to the debtor under state law, not section 522(b)(1) and (d) (Alabama is an opt out state), and the security interest lien must impair the exemption; and (2)

the property must be of the kind included in subsections (A), (B), or (C), which in this case would be "implements ... or tools, of the trade of the debtor ..." from subsection (B).

I

■ The pulpwood truck passes the first test. It may be exempted as personal property under *Ala. Code* § 6–10–6 (1975). The property exempted by the debtor in Schedule B–4 includes wearing apparel, $200; family portraits, $25; and 75 percent of wages, $380.62, totalling $405.62. Other personal property exempted in the schedule amounts to $2,864.88 and includes the $500 truck. The plain language of section 6–10–6[1] shows that the property valued at $2,864.88 (including the truck) is exempt under section 6–10–6 *in addition* to wearing apparel and family portraits. The wages are exempt under *Ala. Code* § 6–10–7 (1975), which section provides an exemption in addition to the section 6–10–6 personal property exemption. See *In re Ezekiel*, No. 85–922, slip op. (Bankr.M.D. Ala., October 24, 1985).

■ The truck, however, is *not* exempt under *Ala. Code* § 6–10–126, as claimed by the debtor. Section 6–10–126 is not an exemption statute. See *First Ala. Bank v. Mims*, 66 B.R. 20 (M.D.Ala.1986). Section 6–10–6, which exempts the truck, exempts personal property generally and does not confer a right of exemption in tools of the trade as such. Since the truck is exempt under section 6–10–6, however, it is immaterial that the debtor sought to exempt it under the wrong statute.

The lien of the creditor on the truck obviously impairs the exemption in this property, since the lien diminishes the value of the exemption.

II

The more difficult issue presented is whether the pulpwood hauler's truck pass-

---

**1.** Section 6–10–6 exempts the "personal property of such resident to the extent of the resident's interest therein, to the amount of $3,000.00 in value, to be selected by him or her, and, *in*

*addition thereto,* all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family..." (Emphasis added)

es the test as an implement or tool of the trade under section 522(f)(2)(B).

Since implements and tools come in various sorts and sizes, it is difficult in many cases to decide whether a particular thing owned by a debtor should be called a tool or implement. The result is inconsistency among decisions of the bankruptcy courts. That is unfortunate because a federal statute should be construed to give it uniform application throughout the nation. 73 Am Jur 2d *Statutes* § 144 (1974).

▪ "Tools" and "implements" as used in subsection (B) are not words of art.[2] It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). Absent unusual circumstances the court is bound by the plain meaning of the language Congress has enacted. *Hills v. I.R.S.,* 691 F.2d 997, 1000 (11th Cir.1982). A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

▪ Dictionary definitions of "tools" and "implements" are of help in discovering the plain meaning of these terms. By definition a tool can be an object[3] or an implement used in performing an operation or carrying on work of any kind, or an apparatus necessary to a person in the practice of a vocation or profession. See *Webster's Third New International Dictionary of the English Language Unabridged* (1976). An implement can be a thing used or employed in a trade or occupation or employment. See *Black's Law Dictionary* 679, 1338 (5th ed. 1979). *Webster's* gives as examples of tools, a hammer, a saw, a machine for shaping metal, a barber's chair, a photographer's camera, and books. The *Black's* definition of "implement" refers to trade implements and farm implements as examples. From these definitions, it is apparent that, for all practical purposes, these two terms are synonymous. *In re Yparrea,* 16 B.R. 33, 35 (Bank.D.N.M.1981). Also, it appears that it is the *use* of the property—not necessarily the size or shape—that determines whether it is a tool. These definitions would certainly include not only hand tools, but also things of much greater size and complexity.

In interpreting the meaning of "implements" or "tools of the trade," some courts have refused to regard certain kinds of property as tools or implements without regard to use.[4] Some courts have said that only property of limited value may be a tool or implement under section 522(f)(2)(B).[5] Some courts, faced with the dearth of legislative history, have attempted a holistic approach to construction of section 522(f)(2)(B).[6] Other courts have examined the ratio of the value of the property to total capital assets to define a tool or

2. There is no indication that the terms are being used in a technical sense. *Matter of Patterson,* 825 F.2d 1140 (7th Cir.1987).

3. An "object" may be anything tangible or visible. *Black's* at 967.

4. "[Tool] is not a word which is commonly used to refer to an automobile or motor vehicle." *In re Harrell,* 72 B.R. 107 (Bankr.N.D.Ala.1987). "We think the tractor is no more a tool of the trade in the statutory sense than the cow is." *In the Matter of Patterson, supra.*

5. *In re O'Neal,* 20 B.R. 13 (Bankr.E.D.Mo.1982) holds "[Subsection (B) ] is to be construed to permit the avoidance of a security interest in hand tools and small implements with only nominal commercial re-sale value." See also *In re Yparrea,* 16 B.R. 33 (Bankr.D.N.M.1981); *In re Middleton,* 37 B.R. 36 (Bankr.D.Minn.1983).

6. Section 522(d)(6) limited to $750 the value of tools and implements to be exempted; therefore, that limitation must be read into the tool and implement provisions of section (f)(2)(B), which are silent as to value. Section 522(d)(2) provides a separate exemption for motor vehicles; section (f)(2)(B) does not. Therefore, liens on motor vehicles may not be avoided under section (f)(2)(B) as tools or implements. See *Matter of Patterson, supra; In re Harrell, supra.*

implement.[7] Some cases use more than one, sometimes all, of these approaches to interpretation. See *Matter of Patterson*, 825 F.2d 1140 (7th Cir.1987); *In re Harrell*, 72 B.R. 107 (Bankr.N.D.Ala.1987). All of this has led to uneven results and no doubt will continue to do so in the absence of legislative rectification.

This court has no difficulty in finding that a pulpwood hauler's truck is a tool of the trade.[8] First the truck passes the "use" test, *In re Walkington*, 42 B.R. 67 (Bankr.W.D.Mich.1984), because it is necessary and used by the debtor in his business. See also *In re Dubrock*, 5 B.R. 353 (Bankr. W.D.Ky.1980). Second, Congress did not place a limit on the value of a tool of the trade under subsection (B). "Neither legislative history nor persuasive case authority compel a holding that only liens on tools or implements of nominal resale value may be avoided under [subsection (B)]." *In re Taylor*, 73 B.R. 149 (Bankr. 9th Cir.1987). In Alabama, as in most states, the value of a tool on which a lien may be avoided is limited as a practical matter by the amount of the personal exemption available. Under *Ala.Code* § 6–10–6 (1975), as already seen, the maximum amount is $3,000.

Third, with respect to statutory construction, the court agrees with the *Taylor* court that "... Congress' failure to provide for specific lien avoidance for motor vehicles in § 522(f) while providing for a motor vehicle exemption in § 522(d)(2), may express the intent that if a vehicle is a tool of trade the liens may be avoided pursuant to § 522(f)(2)(B). The Bankruptcy Code has been amended twice since 1978 and no changes or limitations were made in § 522(f)."

Fourth, the court will not deny lien avoidance on the truck as a tool of the trade merely because it may also be called a capital asset. Broadly speaking, all assets are capital except those specifically excluded. Major categories of noncapital assets include: property held for resale in the normal course of business, trade accounts and notes receivable, depreciable property and real estate used in a trade or business. See *Black's, supra*, at 108. Thus, it appears that tools that are depreciable (generally understood to be tools having a life of more than one year, see 34 Am Jur 2d *Federal Taxation* ¶ 6064 (1988)) are not capital assets. Under a less technical definition, arguably such tools might be called capital assets. The practice, however, of excepting property classified as capital assets from the operation of subsection (B) introduces another uncertainty and merely adds existing confusion on interpretation of the subsection. The plain language of the subsection makes no exception for tools or implements that are capital assets.

Finally, it has been said that Congress, which first provided for lien avoidance on tools or implements of the trade under the Bankruptcy Code, took over a familiar term from state law as a basis for the modest federal exemption. *Patterson, supra*, at 1147. Under state law it was not clear in 1978 when the Code became law or in 1850 (at least in Alabama, Connecticut, and Massachusetts) that a tool of the trade need be of "modest" value. See *Sallee v. Waters*, 17 Ala. 482 (1850), which held that a printer's printing press and type were exempt as "tools and implements of the trade." The arguments in 1950 against holding a

---

**7.** "Even though most of the farm implements here in issue are individually of modest value as compared to the tractor in the Patterson case [*supra*], we believe that taken together they are in fact the debtors' capital assets." *In re Hintz*, 86 B.R. 571 (Bankr.E.D.Wis.1988). See also *In re Heape*, 85 B.R. 577 (D.Kan.1988); *Matter of Patterson, supra*.

**8.** *In re Satterwhite*, 28 B.R. 178 (Bankr.M.D.Ala. 1983) does not hold, as contended by the debtor, that a pulpwood truck is a tool of the trade. In that case the debtor attempted to exempt a pulp-

wood truck *and* pulpwood equipment under *Ala.Code* § 6–10–126 (1975). The case held that the *equipment* was exempt under section 6–10– 126. There was no occasion to decide whether the truck was a tool because the section categorizes "a vehicle used by and essential to the debtor's business" separately from "tools used personally by and essential to the debtor's business." Thus, the pulpwood truck qualified under the section as a vehicle, making it unnecessary to inquire whether it was also a tool.

printing press to be a tool were about the same then as now.[9]

The *Sallee* court observed, as courts still do, "It is to be regretted that the framers of our laws do not (if by possibility it can be done) use more definite and precise language to convey their meaning and intention."

■ The conclusion reached in the case *sub judice* is that any tangible personal property used as a tool or implement in carrying on one's trade qualifies as a tool or implement of the trade under 11 U.S.C. § 522(f)(2)(B).

An appropriate order has heretofore entered in this matter.

---

9. The intention of the Legislature must have been to protect such hand-articles as the operative mechanic or artisan employs in his daily labor, not machinery, furniture, etc., of an extensive establishment … It certainly cannot be contended for a moment that a printing press and types and materials, no matter what their extent or value, are implements of trade, and exempt from levy and sale. If this be so, the most extensive publication offices in the world are within the reservation. The Harpers, it is understood, have a printing establishment worth half a million of dollars. There are many other offices not much less valuable. Even in this State many offices and their furniture, presses, etc. are worth ten thousand dollars, or more. Is an entire lucrative business of one man to be secured to him and his family, while no other pursuits are alike protected? Power presses, propelled by steam, are now employed in many offices— are the steam engines protected? Moreover, if the press, types, materials, etc. are exempt on the principle that otherwise the printer could not support his family, does not the same rule exempt the house in which his works are put up? Without a house to work in, the press and type, etc. are wholly valueless. If this be the principle, what limits shall we assign to its application?

As well may it be contended that all the manufacturing establishments of the country, and all their machinery are tools and implements of trade, including cotton factories, paper factories, iron foundries, wood shops, and even steamboats, wagons and teams used in transportation, etc.

*Sallee, supra,* at 483.

In opposition, the argument went:

The only other question is whether a printing press and types, and type stands, are tools or implements of trade within the meaning of the statute? This statute should be liberally construed. Printing is a mechanical employment: Curtis was a practical printer, worked daily at his trade—this was his only means of support—and his printing press, types, etc. were "tools or implements" of his trade. *Patten vs. Smith,* 4 Conn. 450. The exemption of our statute extends to all "tools or implements of trade." There is no restriction of amount or value.

*Id.* at 484.