In re David Henry McNUTT, dba Dave's Drywall, and Carrie McNutt, Debtors.

NAZARENE FEDERAL CREDIT UNION, Appellant,

v.

David Henry McNUTT, dba Dave's Drywall, and Carrie McNutt, Appellees.

BAP No. AK 87–1443 VAMe.
Bankruptcy No. 3–86–00658.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 20, 1987.

Decided June 8, 1988.

S. Jeff Carney, Wasilla, Ark., for appellees.

Before VOLINN, ASHLAND and MEYERS, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

This is an appeal of an order granting debtor's motion to avoid a nonpossessory, nonpurchase-money security interest in property claimed as exempt, pursuant to 11 U.S.C. § 522(f)(2)(B). The exemption enabling debtor to avoid the lien was for a pickup truck claimed as a "tool of the trade" pursuant to 11 U.S.C. § 522(d)(6). The extent to which the lien could be avoided was increased by utilization of the "wild card" exemption of 11 U.S.C. § 522(d)(5).

FACTS

Debtors and appellees David McNutt d/b/a Dave's Drywall and Carrie McNutt

(McNutts) borrowed money from the appellant, Nazarene Federal Credit Union (Nazarene), to consolidate loans on two vehicles. Nazarene loaned the McNutts $3,245.95 secured by their 1980 Chevrolet pickup. At the date of filing their Chapter 7 petition, the McNutts owed Nazarene $2,796.41. The McNutts listed the value of the truck as $1,350 on Schedule B–2. They originally claimed an exemption for the vehicle in the entire amount of $1,350 under 11 U.S.C. § 522(d)(2), the exemption for an interest in a motor vehicle.

Subsequently, the McNutts brought a motion to avoid Nazarene's lien against the pickup truck. At the hearing on the motion, the McNutts amended their Schedule B–4 to exempt the equity in the pickup to the extent of $750 under 11 U.S.C. § 522(d)(6), the "tools of the trade" exemption, and to the extent of the remainder of its value under 11 U.S.C. § 522(d)(5), the "wild card" exemption. Counsel for Nazarene conceded that the truck was used by McNutt in his drywall business, but asserted that the tools of the trade exemption was intended only to apply to small hand-held tools, and not to vehicles:

> Your Honor, I'll agree that he uses it for drywall. I don't—you know, I don't dispute this man's going to get on the stand and say I use this vehicle to haul my drywall tools. What I'm saying is, and I think the weight of authority [is] substantially on my side, that yes, okay, tools of the trade, that's to cover small hand tools, drywall hand tools. It does not cover a vehicle.

The bankruptcy court, concluding that the vehicle could be claimed as exempt under 11 U.S.C. § 522(d)(6) and that the "wild card" exemption of 11 U.S.C. § 522(d)(5) could be used for purposes of lien avoidance under 11 U.S.C. § 522(f)(2)(B), granted the McNutts' motion to avoid the lien. Nazarene appeals.

## ISSUES AND DISCUSSION

### A.

Can a motor vehicle be exempt as a "tool of the trade" under 11 U.S.C. § 522(d)(6), enabling a debtor to avoid a nonpossessory, nonpurchase-money lien on the vehicle pursuant to 11 U.S.C. § 522(f)(2)(B)?

■ This issue presents a question of fact and a question of law. Whether or not an implement is used in a debtor's trade is a question of fact. *In re Liming,* 797 F.2d 895, 902 (10th Cir.1986). A finding of fact will not be set aside unless it is clearly erroneous. Bankruptcy Rule 8013; *In re Torrez,* 63 B.R. 751, 753 (9th Cir. BAP 1986), *aff'd,* 827 F.2d 1299 (9th Cir.1987). Whether or not a vehicle can be a "tool of the trade" within the meaning of 11 U.S.C. § 522(d)(6) is an issue of law. In addition, there is an issue of law as to whether the "wild card" exemption of 11 U.S.C. § 522(d)(5) can be aggregated with the "tools of the trade" exemption of 11 U.S.C. § 522(d)(6) for the purposes of lien avoidance. We review these issues of law *de novo. In re Torrez, supra.*

Nazarene contends that a vehicle should not be considered a tool of the trade for purposes of lien avoidance under 11 U.S.C. § 522(f)(2)(B) by virtue of the exemption for "implements, professional books, or tools, of the trade of the debtor" in 11 U.S.C. § 522(d)(6). 11 U.S.C. § 522(f)(2)(B) reads:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> .    .    .    .    .
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> .    .    .    .    .
>
> (B) *implements,* professional books, *or tools, of the trade* of the debtor or the trade of a dependent of the debtor ... (emphasis supplied).

In turn, 11 U.S.C. § 522(d)(6) states:

> (d) The following property may be exempted under subsection (b)(1) of this section:
>
> .    .    .    .    .

(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

The pertinent inquiry is whether or not a motor vehicle may be "an implement or tool of the trade of the debtor" within the meaning of section 522(d)(6). If it is determined that a vehicle is exempt under section 522(d)(6), then a lien which is a nonpossessory, nonpurchase-money security interest encumbering the vehicle may be avoided pursuant to section 522(f)(2)(B). *cf. In re Taylor*, 73 B.R. 149, 152 (9th Cir. BAP 1987) (if a motor vehicle is exempt as a tool of trade under a state's exemption laws, then under section 522(f)(2)(B) the liens therein may be avoided.)

The courts are divided as to whether or not a motor vehicle can ever be a tool of the trade under section 522(d)(6).[1] This issue has not as yet been addressed by the Ninth Circuit. The Seventh Circuit recently decided a closely related issue in *In re Patterson*, 825 F.2d 1140 (7th Cir.1987), holding that a tractor is not a tool of the farming trade within the meaning of 11 U.S.C. § 522(d)(6). The court stated:

> There would be no semantic violence in regarding the Pattersons' tractor as a tool of the farming trade, but, while the question is a close one, we think the tractor is no more a tool of the trade in the statutory sense than the cow is.[2] The tractor is not a modest implement but an expensive piece of machinery. It

is one of the principal capital assets of a small farm. To exempt it would be like exempting the airplanes owned by an air charter service. This can't have been what Congress had in mind in allowing an exemption limited to $750. The relevant tools of the trade are the rakes and other hand tools that Mr. Patterson continues to own, and to use as a dairy hand following the bankruptcy.

825 F.2d at 1147 (citations omitted; footnote supplied). The court in *Patterson* did not define what was meant by tools of the trade, but indicated that for a farmer, it referred to hand tools, and that the term did not encompass farm machinery. The *Patterson* court acknowledged that "[t]here would be no semantic violence in regarding the Pattersons' tractor as a tool of the farming trade ..." *Id.* However, the court apparently concluded that because the ceiling on the exemption under 11 U.S.C. § 522(d)(6) is $750, Congress did not intend the exemption to include farm machinery. *cf. In re Duss*, 79 B.R. 821, 822 n. 2 (Bankr.W.D.Wis.1987). Thus, *Patterson* does not give us much guidance for determining what the term "tool of the trade" encompasses.

With all due respect, we are of the view that the all or nothing approach of *Patterson* is too extreme. It hardly needs citation that exemptions are liberally construed in favor of debtors. *In re Ageton*, 14 B.R. 833, 836 (9th Cir. BAP 1981).

---

1. Among those cases holding or acknowledging that a motor vehicle (or motorized farm machinery) may in some instances be a tool of the trade under 11 U.S.C. § 522(d)(6), 11 U.S.C. § 522(f)(2)(B), or applicable state law, are: *In re LaFond*, 791 F.2d 623 (8th Cir.1986); *In re Smith*, 68 B.R. 581 (Bankr.D.Minn.1986); *In re Weinstein*, 44 B.R. 987 (Bankr.E.D.Pa.1984); *In re Dempsey*, 39 B.R. 561 (Bankr.E.D.Pa.1984); *In re Schneider*, 37 B.R. 747 (Bankr.N.D.Ga. 1984); *In re Langley*, 21 B.R. 772 (Bankr.D.Me. 1982); *In re Reed*, 18 B.R. 1009 (Bankr.W.D.Ky. 1982); *In re Dillon*, 18 B.R. 252 (Bankr.E.D.Cal. 1982); *In re Eagan*, 16 B.R. 439 (Bankr.N.D.N.Y. 1982); *In re Goosey*, 10 B.R. 285 (Bankr.D.Neb. 1981); *In re Damron*, 5 B.R. 357 (Bankr.W.D. Ky.1980); *In re Dubrock*, 5 B.R. 353 (Bankr.W. D.Ky.1980); and *In re Meyers*, 2 B.R. 603 (Bankr.E.D.Mich.1980).

Among those cases holding or opining that a motor vehicle or motorized farm machinery is by definition not a tool of the trade are: *In re Patterson*, 825 F.2d 1140 (7th Cir.1987); *In re Nowak*, 48 B.R. 290 (W.D.Wis.1984); *In re Harrell*, 72 B.R. 107 (Bankr.N.D.Ala.1987); *In re Trainer*, 56 B.R. 21 (Bankr.S.D.Tx.1985); *In re Ramey*, 45 B.R. 562 (Bankr.W.D.Va.1984); *In re Curry*, 18 B.R. 358 (Bankr.N.D.Ga.1982); *In re Steele*, 8 B.R. 94 (Bankr.S.D.1980); and *In re Sweeney*, 7 B.R. 814 (Bankr.E.D.Wis.1980) (dicta).

2. The debtor in *Patterson* contended that 51 cows and the tractor were all tools of the trade. The cows and the tractor were sold at auction, and the debtor claimed as exempt the entire sale proceeds, $24,600, of which $20,300 was allocated to the cows and $4,300 to the tractor.

There are cases which would confine the concept of "tool" to a manually-operated device. *See In re Harrell*, 72 B.R. 107 (Bankr.N.D.Ala.1987) (construing the word "tool" within the meaning of the lien avoidance provision of section 522(f)(2)(B)). However, it must be recognized that trades and uses of implements change and evolve; prior definitions and concepts should be consistent with changes in technology and trades. *In re Schneider*, 37 B.R. 747, 751 (Bankr.N.D.Ga.1984). If we are indeed concerned with giving debtors a fresh start, we must give them the wherewithal. In addition, there is substantial authority for defining motor vehicles as "tools of the trade" for purposes of exemption. *See In re Seacord*, 7 B.R. 121, 123–124 (Bankr.W.D.Mo.1980) and cases cited therein. We therefore adopt what has been called the "emerging rule" with respect to when a motor vehicle may be considered a tool of the trade: a motor vehicle is a tool of the trade if it is necessary to, and is used by the debtor to carry on his or her trade. *In re Dempsey*, 39 B.R. 561, 563 (Bankr.E.D. Pa.1984); *In re Meyers*, 2 B.R. 603, 605 (Bankr.E.D.Mich.1980).

The application of the rule for determining when an automobile is a tool of the trade is subject to dispute. Some courts focus on the necessity of the motor vehicle to the *trade* of the debtor, while other courts focus on the necessity of the vehicle to the *particular debtor. Compare In re Smith*, 68 B.R. 581 (Bankr.D.Minn.1986) (construes state exemption statute and concludes that whether or not an automobile or truck can be a tool of the trade should be based upon the vehicle's connection with a particular trade or business, not upon its connection with an individual debtor) *with In re Eagan*, 16 B.R. 439 (Bankr.N.D.N.Y. 1982) (it is the use and the necessity of the vehicle to the debtor and not its modifications or unique suitability to the trade which determine its status as a tool of the trade) *and In re Goosey*, 10 B.R. 285 (Bankr.D.Neb.1981) (automobile is necessary to trade of insurance salesman if debtor is to continue to work for the same employer.)

We conclude that the proper inquiry is whether or not the vehicle is used by and is necessary to a debtor for his or her work, trade or occupation. Nazarene points us to authority that may be read to suggest that special modification of a vehicle to suit the trade of the debtor is necessary before a motor vehicle may be exempted. *See In re Dempsey*, 39 B.R. 561 (Bankr.E.D.Pa.1984). We decline to impose such a requirement. A vehicle may be necessary to and used by the debtor regardless of whether or not it is specially outfitted for the debtor's trade. *See In re Goosey*, 10 B.R. 285, 236 (Bankr. D.Neb.1981).

■ In this case, the bankruptcy court concluded as follows with respect to the McNutts' truck:

> [I]t's really a legal interpretation as opposed to a factual one, that's given your concession that this is a—he will testify that it is used in his drywall business, and my legal conclusion is that that's sufficient to be a tool of the trade.

The bankruptcy court, based upon the stipulation of the parties in open court, was entitled to find that the truck was used in the debtor's trade, and properly concluded that as a matter of law the truck was a tool of the trade. The inference may be further drawn that the truck was needed to carry drywall tools and materials so that McNutt could thereby do business or ply his trade. In view of these facts, it follows that pursuant to 11 U.S.C. § 522(f)(2)(B), Nazarene's nonpossessory, nonpurchase-money security interest in the truck may be avoided to the extent that it impairs the McNutts' exemption under 11 U.S.C. § 522(d)(6). *See In re Taylor*, 73 B.R. 149, 152 (9th Cir. BAP 1987).

### B.

If a motor vehicle is a tool of the trade and thus exempt under 11 U.S.C. § 522(d)(6), may the additional "wild card" exemption of 11 U.S.C. § 522(d)(5) be used to avoid a nonpossessory, nonpurchase-money security interest in any value in excess of the exemption for tools of the trade?

■ Nazarene asserts that even if the McNutts' truck is exempt as a "tool of the trade" within the meaning of 11 U.S.C. § 522(d)(6), the "tools of the trade" exemption cannot be aggregated with the "wild card" exemption of 11 U.S.C. § 522(d)(5) for purposes of lien avoidance under 11 U.S.C. § 522(f)(2)(B).

Nazarene contends that the structure of 11 U.S.C. § 522(f)(2), in tracking the language of the federal exemptions allowed under 11 U.S.C. § 522(d)(3), (4), (6), and (9), limits the debtor's power to avoid nonpossessory, nonpurchase-money liens to liens which impair only those exemptions. Allowing debtors to aggregate the exemptions of 11 U.S.C. § 522(d)(5) and (6) would hamper financing of vehicles if creditors feared that a lien on the vehicle may be avoided to the extent of the $750 tools of the trade exemption plus any available exemption under the "wild card" exemption. In addition, aggregation of the exemptions of 11 U.S.C. § 522(d)(5) and (6) is contrary to the Congressional intent in enacting the lien avoidance provisions of 11 U.S.C. 522(f)(2). Finally, Nazarene asserts that avoidance of a nonpossessory, nonpurchase-money security interest in the specified items was intended to apply only to items of little value to the creditor but of great replacement cost to the debtor.

While there is no Ninth Circuit authority addressing the issue of whether or not the exemption of 11 U.S.C. § 522(d)(6) may be aggregated with the "wild card" exemption of 11 U.S.C. § 522(d)(5) for purposes of lien avoidance, we note *Augustine v. United States*, 675 F.2d 582 (3d Cir.1982), in which the Court of Appeals held that the "wild card" exemption could be aggregated with the "tools of the trade" exemption for purposes of lien avoidance under 11 U.S.C. § 522(f)(2).

The language of the statute itself permits aggregation. *Augustine v. United States*, 675 F.2d at 585; *see In re Falconer*, 79 B.R. 283, 286 (W.D.Mich.1987); *In re Walkington*, 42 B.R. 67, 74 (Bankr.W.D. Mich.1984). 11 U.S.C. § 522(f), cited and discussed above, allows a debtor to avoid a lien, without qualification, if the lien impairs an exemption to which the debtor is entitled, where the lien is a nonpossessory, nonpurchase-money security interest in any implements or tools of the trade of the debtor. Therefore, if the lien impairs an exemption for tools of the trade, whether it be a "wild card" or "tools of the trade" exemption, then the lien may be avoided. We must assume that Congress understood that the language of 11 U.S.C. § 522(f) would compel this result. *See Augustine v. United States*, 675 F.2d at 586.

Nazarene contends that the correlation between the language of 11 U.S.C. § 522(f)(2) and the specific exemptions of 11 U.S.C. § 522(d)(3), (4), (6), and (9) means that lien avoidance is strictly limited to the specific exemptions listed in section 522(d). This argument was considered and rejected in *In re Walkington*, 42 B.R. at 75. The absence of the "wild card" exemption from section 522(f)(2) does not establish that Congress intended to exclude it from the debtor's lien avoidance. *Id.* Had Congress intended that lien avoidance should be limited under those circumstances, it would have clearly expressed that intention. *Id.* We also note the Bankruptcy Code has been amended twice since 1978 and no changes have been made to the provisions of 11 U.S.C. § 522(f). *In re Taylor*, 73 B.R. 149, 152 (9th Cir.BAP 1987).

With respect to Nazarene's contention that an expansive reading of section 522(f)(2) will severely limit the refinancing of vehicles, we note that this involves a policy consideration that is more appropriately addressed in the legislative arena. *In re Liming*, 797 F.2d 895, 901 (10th Cir. 1986); *In re Falconer*, 79 B.R. 283, 287 (W.D.Mich.1987); *In re Walkington*, 42 B.R. at 75.

Nazarene asserts that the lien avoidance provisions of 11 U.S.C. § 522(f)(2) were intended to apply only to goods of little value to the creditor but of high replacement cost to the debtor, and that this intention is subverted by the aggregation of exemptions. This contention has its foundation in the following legislative history:

In fact, were the creditor to carry through on his threat and foreclose on

the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

H.Rep. No. 595, 95th Cong., 2d Sess. 127, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6088. Some courts have relied on this legislative history to narrowly interpret the lien avoidance provision of 11 U.S.C. § 522(f)(2) and limit its application to the specific property exemptions of 11 U.S.C. § 522(d)(3), (4), (6) and (9). *See In re Sweeney,* 7 B.R. 814, 818 (Bankr.E.D.Wis.1980). However, such an interpretation ignores the clear language of the statute, as well as legislative history which states that a "debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods." H.Rep. No. 595, 95th Cong., 2d Sess. 362 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6318. *In re Walkington,* 42 B.R. at 74. Although "tools of the trade" are not specifically mentioned in the House Report, security interests in "tools of the trade" are avoidable under 11 U.S.C. § 522(f)(2)(B), and Congress could not have been unaware that such tools might well be more expensive than ordinary household goods. *Augustine v. United States,* 675 F.2d at 586.

## CONCLUSION

A motor vehicle can be an implement or tool of the debtor's trade, and thus exempt under 11 U.S.C. § 522(d)(6), if it is necessary to and used by the debtor to carry on his or her work, trade, or occupation. The "wild card" exemption of 11 U.S.C. § 522(d)(5) may be aggregated with the "tools of the trade" exemption of 11 U.S.C. § 522(d)(6) for the purpose of lien avoidance under 11 U.S.C. § 522(f)(2)(B).

The order of the bankruptcy court is affirmed.