**In re Gary THOMPSON and Randalyn Thompson, Debtors–Appellees.**

**Appeal of ABBOTSFORD STATE BANK.**

**No. 88–2554.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1989.

Decided Feb. 1, 1989.

Terrence J. Byrne, Wausau, Wis., for debtors-appellees.

William C. Gamoke, Nikolay, Jensen, Scott, Gamoke & Grunewald, Colby, Wis., for defendant-appellant.

Before CUMMINGS, POSNER, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

This case is a sequel to *In re Patterson*, 825 F.2d 1140 (7th Cir.1987), another appeal by the Abbotsford State Bank of Wisconsin from a ruling in favor of a bankrupt farm couple to whom the bank had made a secured loan. The principal question in *Patterson* was whether cows and a tractor were eligible for the exemption in 11 U.S.C. § 522(d)(6) for "the debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." We held that they were not; that the exemption is intended for personal tools of modest value,

not for farm animals or an expensive piece of machinery such as a tractor. See 825 F.2d at 1145–47. Rather than proceeding under section 522(d)(6), the Pattersons could have availed themselves of the exemption from execution by creditors that Wisconsin law creates for livestock, farm implements, and tools of the trade, see Wis.Stat. §§ 815.18(6), (8), since the Bankruptcy Code permits a debtor to take out of the bankrupt estate property that is exempt from execution under either state or federal law. 11 U.S.C. § 522(b)(2)(A); see generally *In re Sullivan*, 680 F.2d 1131 (7th Cir.1982). The debtors in this case, the Thompsons, did take the state fork in the road: they claimed an exemption under the Wisconsin statute for fifteen items of farm equipment, including tractors and a combine. The total appraised value of this equipment was $13,775, but the exemption claimed was only $8,375, because the statute places a ceiling on the value of specific items. (For example, there is a ceiling of $1,500 on each tractor, and the debtor may exempt only one, although the Thompsons were allowed to exempt two because both Thompsons had declared bankruptcy.) But unlike its federal counterpart, 11 U.S.C. § 522(d)(6), quoted above, the Wisconsin statute places no overall dollar limit on the exemption for implements and tools of the trade; that is why the Thompsons were able to claim more than $8,000. On the generosity of the Wisconsin exemption, see *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987).

Merely obtaining an exemption would have done the Thompsons no good. (This was also true in *Patterson*.) The bank had a lien on the farm equipment, and an exemption is not effective against a lien unless it comes within the lien-avoidance provision of the Bankruptcy Code, 11 U.S.C. § 522(f); otherwise it is effective only against unsecured creditors. That provision allows the debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [11 U.S.C. § 522(b)(2)(A)], but only [so far as directly relevant to this case] if such lien is ... a

nonpossessory, nonpurchase-money security interest in any ... implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." 11 U.S.C. § 522(f)(2)(B). The bankruptcy judge, see 82 B.R. 985 (Bankr. W.D.Wis.1988), and the district judge to whom the bank appealed the bankruptcy judge's ruling, agreed that the exemption claimed by the Thompsons under the Wisconsin statute is eligible for lien avoidance.

The bank disagrees. It argues that our narrow construction in *Patterson* of the words "implements" and "tools of the trade" as they appear in 11 U.S.C. § 522(d)(6) must extend to the identical language in section 522(f)(2)(B), even though we had said in *Patterson* that "the same language in section 522(f), since it could be picking up a tools of the trade exemption in state law as well as the tools of the trade exemption (which need not have the same scope) in 522(d), could mean two different things." 825 F.2d at 1146. The identical wording of sections 522(d)(6) and 522(f)(2)(B) (identical save for the dollar limit in the former) supports the bank's interpretation. So does the purpose of section 522(f)(2), which is to prevent the form of overreaching that occurs when a creditor, in order to coerce payment of a debt owed him, seizes or threatens to seize items of slight market value that may nevertheless be of great importance to the happiness, dignity, employability—even identity—of the debtor. These are such items as household furnishings and other household goods, including clothing, held primarily for the personal use of the debtor or his family; implements, professional books, or tools of the trade of the debtor or his dependents; and professionally prescribed health aids for the debtor or his dependents. These are, in fact, the three classes of goods that are entitled to lien avoidance (to the extent exempt) under the three subsections of section 522(f)(2). See H.R.Rep. No. 595, 95th Cong., 2d Sess. 126–27 U.S. Code Cong. & Admin.News pp. 5787, 6087, 6088 (1978). (Section 522(f)(1) has a different purpose from (f)(2). It allows the debtor to avoid a judicial lien on exempt proper-

ty—that is, a lien obtained by a creditor who has beaten the debtor to court. Such a lien interferes with the bankruptcy court's control over the bankrupt estate. See H.R.Rep. No. 595, *supra,* at 126–27.)

Allowing the debtor to avoid a lien on tractors and other items of farm equipment potentially worth many thousands of dollars does not advance the purpose of the lien-avoidance section. It not only opens a large loophole in the statute to the detriment of secured lenders, but by doing so it hurts farmers as a class. The less security they can give for a loan, the less money secured lenders will lend them. Alternatively those lenders will charge higher interest rates to protect themselves against the increased risk that in the event of a default some of the collateral for the loan will be placed beyond the lender's reach. Or they may demand more collateral. There might appear to be a partial offset, however—for wouldn't unsecured creditors be willing to lend on better terms, the less secured credit had been extended to the debtor? But no; the exemption that triggers lien avoidance under section 522(f) is also effective against *un*secured creditors —that is what it means to exempt property; it is removed from the bankrupt estate. In addition, because disappointed secured creditors will file as unsecured creditors, there will be more creditors fighting over the debtor's carcass. The general point is that, at least within broad limits, the law cannot help debtors by curtailing the rights of creditors. "The welfare of debtors and of creditors is intertwined; the fewer the protections for creditors, the higher interest rates are, and interest is paid by debtors; conversely, the greater the protection for creditors, the lower interest rates are, and debtors as a group benefit." *In re Xonics Imaging, Inc.,* 837 F.2d 763, 765 (7th Cir.1988). We have made this point— repeatedly—with reference to bankruptcy provisions designed to "help" farmers. See *In re Stegall,* 865 F.2d 140, 144 (7th Cir.1989), and cases cited there. *Patterson* held that Congress had conceived the implements and tools of the trade exemption narrowly in section 522(d)(6), as limited to personal equipment of modest value. In using the identical language in section 522(f)(2)(B), Congress may have intended a similarly narrow compass for the privilege of avoiding a lien on these items, consonant with the narrow compass of the surrounding subsections (household furnishings and medical aids).

Despite the powerful arguments for the bank's interpretation, we, like the three other circuits that have addressed the question, consider them overborne by the language and structure of section 522 as a whole. See *In re Liming,* 797 F.2d 895, 901 (10th Cir.1986); *In re LaFond,* 791 F.2d 623, 627 (8th Cir.1986); *Augustine v. United States,* 675 F.2d 582 (3d Cir.1982); 3 Collier on Bankruptcy ¶ 522.29, at p. 522–90 (15th ed. 1988).. Section 522(b)(2)(A), in language that could not be clearer (and whose purport is not questioned by the bank), entitles the debtor to elect between state and federal exemptions. Among the common state exemptions—one the draftsmen of the Bankruptcy Code of 1978 must have been aware of (and we say this even though acutely aware of the danger of imputing unrealistic amounts of knowledge to Congress, see *Edwards v. United States,* 814 F.2d 486, 488 (7th Cir.1987))—is one for implements, professional books, and tools of the trade (for the sake of brevity we shall collapse the three categories to "tools of the trade"). See, e.g., Ill.Rev.Stat. ch. 110, ¶ 12–1001(d); Ky.Rev. Stat. § 427.010(1); Mich.Comp.L. § 600.6023(5). Another reason the draftsmen would have known that some debtors would elect the state exemption for tools of the trade rather than the federal exemption in section 522(d)(6) is that the federal exemption has a low ceiling ($750); the Kentucky and Michigan exemptions, cited above, like the Wisconsin exemption, are far more generous than the federal one. In addition, the Code expressly authorizes states to forbid their citizens to elect the federal exemptions. See 11 U.S.C. § 522(b)(1). More than two-thirds of the states have taken up Congress's invitation. See *Dominion Bank v. Nuckolls,* 780 F.2d 408, 414 (4th Cir.1985) (concurring opinion);

3 Collier on Bankruptcy, *supra*, ¶ 522.02, at p. 522–11 n. 4a.

Section 522(f)(2)(B) explicitly names the tools of the trade exemption as one entitled to lien avoidance. It also makes no reference to section 522(d)(6) save as may be implicit in the identical wording of the two sections, and places no dollar limit (as in section 522(d)(6)) on the exemption. As a semantic matter, the reference in section 522(f)(2)(B) to the tools of the trade exemption is to both the federal exemption and the corresponding state exemption, depending on which the debtor has elected under section 522(b)(2)(A). Semantics can mislead, but it seems unlikely that Congress would simply have overlooked the existence of state exemptions for tools of the trade. Such exemptions are common and commonly more generous than the federal exemption, as we have seen, and the Bankruptcy Code of 1978 was a carefully although not infallibly deliberated measure.

The bank concedes as it must that the Thompsons were within their rights in electing the Wisconsin exemption and does not argue that any item of exempted equipment is something other than a tool of the trade within the meaning of the Wisconsin statute. In effect it asks us to combine a federal definition of tools of the trade (*Patterson*) with the dollar limits in the Wisconsin statute. This would produce the anomaly that although, as against unsecured creditors, the Thompsons can remove the entire $8,375 from the bankrupt estate, as against the secured creditor (the bank) they can remove only $600. This is because the Wisconsin statute imposes a limit of $300 per debtor on "small tools and implements," Wis.Stat. § 815.18(6)—the only category of farm equipment that (according to the bank) is embraced by the narrow definition of tools of the trade that we adopted in *Patterson*. Yet rather than being tighter than the exemption in section 522(d)(6), as the bank's analysis implies (for $600 is less than $750), the lien-avoidance provision of 522(f)(2)(B) omits the $750 ceiling in 522(d)(6). Maybe not too much should be made of this omission, though. Lien avoidance is permitted only "to the extent that such lien impairs an exemption to which the debtor would have been entitled." 11 U.S.C. § 522(f)(2)(B). That would seem to imply that the $750 ceiling in section 522(d)(6) automatically caps lien avoidance for debtors electing the federal exemption for tools of the trade. This is not certain, however. It can be argued that the "wild card" exemption of 522(d)(5), which allows the debtor to exempt his "aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided" in 11 U.S.C. § 522(d)(1) for the debtor's residence, can be applied to property consisting of tools of the trade, thereby turning the wild-card exemption into another tools of the trade exemption that can be used with section 522(f)(2)(B) to avoid liens. Weird as this argument may seem, the Third Circuit accepted it in *Augustine v. United States*, *supra*, 675 F.2d at 585–86. We ducked the issue in *Patterson*, see 825 F.2d at 1142, 1148, and need not resolve it here. Yet it does illustrate the element of paradox in interpreting the avowedly generous Wisconsin exemption for tools of the trade to yield only $600 in lien avoidance. For under that interpretation, the Thompsons' election of the more generous Wisconsin exemption made them worse off—by at least $150 and possibly by much more—than if they had elected the avowedly less generous federal exemption.

There is an analogy between the consequences of adopting the bank's interpretation and the problem created by selective borrowing of state statutes of limitations for federal statutes that specify no limitations period. The tightness of a limitations period depends not only on the nominal length of the period but also on defenses to the statute of limitations, such as tolling, and on other circumstances that determine the length of the period in particular cases. "The actual generosity of a statute of limitations depends not only on the nominal period within which suit must be brought but on provisions allowing that period to be extended for various reasons, so that if the federal court borrows just the period it may in fact be giving plaintiffs more or less time than the state that enacted the

borrowed statute would have thought appropriate in the circumstances." *Del Raine v. Carlson,* 826 F.2d 698, 706 (7th Cir.1987); see also *Hemmings v. Barian,* 822 F.2d 688, 691 (7th Cir.1987); *Cange v. Stotler & Co.,* 826 F.2d 581, 599 (7th Cir. 1987) (concurring opinion). Similarly, if we grafted the dollar limitations in the Wisconsin exemption onto the federal definition of tools of the trade, we would be creating a hybrid that bore no relation to the goals and policies of the Wisconsin legislature in creating the exemption; likewise if we jettisoned those limitations or replaced them with the $750 limitation in section 522(d)(6). The prudential limits on judicial rewriting of statutes would be exceeded if we adopted the interpretation that the bank urges.

Despite our earlier remarks about what the authors of the Bankruptcy Code must have known, we acknowledge the possibility that they overlooked the potential interaction between the lien-avoidance provision for tools of the trade and the state exemption for tools of the trade that a debtor in a state having a generous such exemption might elect under section 522(b)(2)(A). Even carefully considered, carefully drafted, statutes exhibit flaws in drafting. See, e.g., *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1287–88 (7th Cir.1986). The scanty legislative history of the lien-avoidance provision refers only to "certain household and personal goods," H.R.Rep. No. 595, *supra,* at 362—there is no mention of implements, professional books, or tools of the trade, though conceivably they were intended to be encompassed by "personal goods." The Report of the Commission on the Bankruptcy Laws of the United States (1973), which was influential in the drafting of the Code, contained no recommendation for avoiding liens on implements or tools of the trade. See H.R.Doc. 93–137, pt. 1, at p. 173. The origin of section 522(f)(2)(B) is obscure; and the entire scheme of optional state exemptions (a scheme that includes as we saw a provision authorizing the state to opt out) that underlies the difficulties of the present case is such a mess as to call into question the skill of the Code's draftsmen

with regard to questions of exemption generally. See, e.g., *Dominion Bank v. Nuckolls, supra,* 780 F.2d at 414–18 (concurring opinion).

But as we have been at pains to emphasize, we cannot repair section 522(f)(2)(B) simply by adopting a uniform federal definition for tools of the trade. By doing so we would be arbitrarily truncating the Wisconsin exemption. If Congress can find the time, it may want to consider whether to plug the loophole that the Thompsons have found in the lien-avoidance provision. That could be done by confining section 522(f)(2)(B) to tools of the trade (including implements and professional books—remember that we are using "tools of the trade" to cover all three categories) having a value no greater than $750, or some other specified value. There would still be problems, though. Subsection (2)(A) of section 522(f) (household furnishings, etc.—including jewelry and animals) also lacks a dollar ceiling. And while the corresponding federal exemptions have caps ($500 for jewelry, $4,000 for household furnishings and other personal goods, other than jewelry), see 11 U.S.C. §§ 522(d)(3), (4), implying that avoiding liens on such items is identically capped, the caps are not necessarily the same as in the corresponding state exemptions. And the interplay of the wild-card exemption must also be considered.

The bank may be right to grouse about section 522(f)(2). See Note, *Avoiding Liens Under the Bankruptcy Code: Construction and Application of Section 522(f),* 15 U.Mich.J.Law Reform 577 (1982). But it is grousing to the wrong body.

■ The bank argues, finally, that section 522(f)(2)(B) is unconstitutional under the just-compensation clause of the Fifth Amendment if construed (as we have just construed it) to destroy the bank's lien on the tractors and other items held in *Patterson* not to be implements or tools of the trade for purposes of section 522(d)(6). The bank points out that its security interest is property for purposes of the takings clause, see *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Armstrong v.*

*United States,* 364 U.S. 40, 44–46, 80 S.Ct. 1563, 1566–1568, 4 L.Ed.2d 1554 (1960); that it is being taken to the extent of $8,375; and that the federal government does not propose to offer compensation for the taking. But this argument has nothing to do with whether tools of the trade are defined the same way for purposes of lien avoidance as they are defined for purposes of the federal exemption for tools of the trade. The redefinition that the bank seeks would reduce rather than eliminate the alleged taking; it would be an uncompensated $600 taking rather than an uncompensated $8,375 taking. The bank's argument *au fond* is that lien avoidance is unconstitutional; it is a taking of the creditor's security; all of section 522(f) should fall. But lien avoidance is not a taking when it is authorized *before* the creditor makes the secured loan in question, which is the case here. There is no taking when the creditor is simply told that if he extends security to a borrower who later goes bankrupt, he may not be able to enforce his security interest to the hilt. He can protect his security by reducing the amount of the loan or refusing to deal with borrowers who are not fully creditworthy; he can demand compensation for the added risk by charging a higher interest rate; he can demand additional collateral; or he can take some combination of these self-protective measures. In effect he can arrange compensation in advance for the taking of his security interest; he has no need to invoke the protection of the just-compensation clause of the Fifth Amendment.

■ We hesitate to suggest that no prospective curtailment of property rights could ever violate that clause. What if Congress passed a law that all property sold after January 1, 1990, is subject to being taken by the federal government without compensation? There would in that case be an immediate depressive effect on property values, so current owners of property would be hurt. But maybe the enactment of the Bankruptcy Code reduced the value of lending institutions. On the other hand not every prospective diminution in the rights of creditors can be an unconstitutional taking; for such a conclu-

sion would come close to nullifying the Constitution's bankruptcy clause. We need not pursue these interesting questions. The conclusion that section 522(f), when as here it is applied prospectively, does not violate the takings clause of the Fifth Amendment is the premise of *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), which construed the statute to be applicable only prospectively in order to obviate a constitutional question. See *id.* at 78–82, 103 S.Ct. at 412–14; see also *Holt v. Henley,* 232 U.S. 637, 639–40, 34 S.Ct. 459, 460, 58 L.Ed. 767 (1914) (Holmes, J.). The constitutionality of section 522(f) is not an open question, at least at our level.

All this is not to say that Congress was wise—at least from a broadly social rather than narrowly political standpoint—to create a structure that makes it impossible for farmers in particular states to create secured interests in farm machinery that survive bankruptcy. It is doubtful, as we have said, that farmers are helped by this legislative paternalism. It seems a gratuitous interference with the free market. But that is not our business.

AFFIRMED.