**In the Matter of Keath Allen SHIPMAN, Marcia Lee Shipman, Debtors.**

**Bankruptcy No. 93–11336.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

May 4, 1994.

Michael Harmeyer, Fort Wayne, IN, for debtors.

Stanley Yoder, Defiance, OH, for Hicksville Bank.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on debtors' motion to avoid the security interest of Hicksville Bank on their 1976 Chevrolet pick-up truck. The truck has been claimed as exempt pursuant to I.C. 34–2–28–1(a)(2). Debtors contend that the truck is a tool of Mr. Shipman's trade, entitling them to avoid the bank's nonpossessory, nonpurchase-money security interest pursuant to 11 U.S.C. § 522(f)(2)(B). The bank acknowledges that it holds a nonpossessory, nonpurchase-money security interest on the truck. It objects to the motion, however, arguing that the truck does not qualify as a tool of the debtor's trade. The parties have submitted this issue to the court based upon their stipulations of fact and the briefs of counsel.

Pursuant to 11 U.S.C. § 522(f)(2):

[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) A nonpossessory, nonpurchase-money security interest in any—

\* \* \* \* \* \*

(B) implements, professional books, or tools, of the trade of the debtor[.] 11 U.S.C. § 522(f)(2)(B).

The debtor, Keath Allen Shipman, works as a product technician for the Wieland Furniture Company. His general duties require the regular use of a truck for picking up various products for his employer and transporting them back to its place of business. The employer does not own a vehicle he could use for this purpose. Although it did not make owning a vehicle a specific prerequisite to debtor's employment, the company requires him to have daily access to a vehicle in order to perform the duties of his job. While the employer states that the debtor will not be fired in the event he no longer has the use of the truck, it will be his responsibility to find alternative transportation.

■ The present dispute arises out of the parties' differing interpretations given to the term "tools of the trade" as used in § 522(f)(2)(B). The bank argues for a strict standard under which the property must be the *sine qua non* of debtor's continued employment. Under this approach, an item does not qualify as a tool of the trade unless, in losing it, a debtor would lose its employment as well. Debtor advances a broader construction which examines the relationship between the property in question and the duties a debtor is expected to perform in the course of its employment.

Although the term "tools of the trade" appears twice in § 522, see 11 U.S.C. § 522(d)(6) & (f)(2)(B), it is not defined. The Seventh Circuit has had to grapple with the consequences of the absence of a definition on two separate occasions. *See In re Thompson*, 867 F.2d 416 (7th Cir.1989); *Matter of Patterson*, 825 F.2d 1140 (7th Cir. 1987). While observing that the difficulties presented by the lack of a definition and the obscure origins of § 522(f)(2)(B) created "such a mess as to call into question the skill of the Code's draftsmen with regard to questions of exemptions ...", *Thompson*, 867 F.2d at 421, it specifically refused to "repair section 522(f)(2)(B) simply by adopting a uniform federal definition for tools of the trade." *Id.* The court concluded that:

Section 522(f)(2)(B) explicitly names the tools of the trade exemption as one entitled to lien avoidance. It also makes no reference to section 522(d)(6) save as may be implicit in the identical wording of the two sections, and places no dollar limit (as in section 522(d)(6)) on the exemption. As a semantic matter, the reference in section 522(f)(2)(B) to the tools of the trade exemption is to both the federal exemption and the corresponding state exemption, de-

pending on which the debtor has elected under section 522(b)(2)(A). *Thompson,* 867 F.2d at 420.

As a result, in the cases it confronted, the scope of a debtor's ability to avoid a lien upon tools of the trade was governed by the scope of the tools of the trade exemption it had claimed. *See In re Stallsworth,* 133 B.R. 470, 474 (Bankr.S.D.Ind.1991). Thus, in *Patterson,* where debtors had claimed the federal exemptions of § 522(d), the concept of tools of the trade was limited, via § 522(d)(6), to items of modest value, such as rakes and other hand tools, and was not expanded through the "wildcard exemption" of § 522(d)(5). *Patterson,* 825 F.2d at 1146–48 (cows and a tractor not tools of the trade). Where more liberal state exemptions for tools of the trade were involved, however, *Thompson* permitted the avoidance of liens on the items subject to the exemption. *Thompson,* 867 F.2d at 421 (tractor, combine and other farm equipment were tools of the trade).

◼ Although it has the anomaly of producing contrary results in seemingly identical situations, the approach to the avoidance of liens upon a debtor's tools of the trade adopted by the Seventh Circuit is workable, as long as there is some type of underlying state or federal exemption for tools of the trade. Unfortunately, Indiana does not have and has not had anything remotely resembling a tools of the trade exemption for more than 140 years. At least as early as 1851, Indiana had abandoned the practice of granting exemptions in specific items of property in favor of the "modern innovation" of exempting a particular dollar amount of property generally, with the value of the available exemption being determined, not by the property's use, but by its classification as real, tangible or intangible.[1] *See Spangler v. Bolinger,* 216 Ind. 28, 22 N.E.2d 983, 984–85 (1939); *Stallsworth,* 133 B.R. at 474–75. Thus, Indiana has no exemption for or body of law concerning what may or may not be a tool of the trade.[2] Unless the term "tools of the trade" as used in § 522(f)(2)(B) has some type of uniform meaning, independent from the law creating the underlying exemption, Indiana debtors will not be able to take advantage of the opportunity to avoid liens upon this type of property.[3] This might be a legitimate conclusion but for the fact that lien avoidance is a matter of federal, rather than state, law, *In re Heape,* 886 F.2d 280, 282 (10th Cir.1989); *Matter of Thompson,* 750 F.2d 628, 630 (8th Cir.1984); *In re Graettinger,* 95 B.R. 632, 634–35 (Bankr.N.D.Iowa 1988), and states may not define exemptions in such way as to defeat a debtor's rights under § 522(f). *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Consequently, this court must grapple with the question the Seventh Circuit happily avoided—what are "tools of the trade" under § 522(f)(2)(B)?

---

1. The most obvious survival of the prior practice of exempting property based upon its intrinsic nature or particular use is I.C. 34–2–28–1(a)(4) which exempts "professionally prescribed health aids...."

2. The exemptions allowed under the statute of 1843 for items that can potentially be characterized as tools of the trade, i.e., one cow and calf, six sheep, a chopping axe, one plough, and a weeding hoe, *Spangler,* 22 N.E.2d at 984, were exclusively agrarian. Assuming that this was an exemption for tools of the trade, as opposed to a general exemption available to any person who happened to own them regardless of whether or not they made their living from farming, the societal changes that have occurred since the statute was enacted have rendered the list so obsolete that it is all but irrelevant to any consideration of what might constitute a tool of the trade under Indiana law in the last decade of the twentieth century. Thus, while the court agrees with the result in *Stallsworth,* 133 B.R. 470, its reliance on what might have been an Indiana tools of the trade exemption, enacted 150 years ago, to determine what the scope of a hypothetical contemporary list might be was inappropriate. Rather than attempting to force the analysis of § 522(f)(2)(B) into a mold it cannot possibly fit, this court feels that a more appropriate course is to recognize that the approach articulated by the Seventh Circuit cannot possibly work where exemptions are claimed under Indiana law.

3. Indiana has exercised its authority under 11 U.S.C. § 522(b)(1) and opted out of the federal bankruptcy exemptions. I.C. 34–2–28–0.5. As a result, its residents may only claim the exemptions specified by Indiana law. The only available exemption for debtors' vehicle and the one which has been claimed is I.C. 34–2–28–1(a)(2), which allows a debtor to exempt up to $4000.00 in "[nonresidential] real estate or tangible personal property...."

Unfortunately this task is complicated by the variety of ways in which courts have approached the issue.

In interpreting the meaning of "implements" or "tools of the trade," some courts have refused to regard certain kinds of property as tools or implements without regard to use. Some courts have said that only property of limited value may be a tool or implement under section 522(f)(2)(B). Some courts, faced with the dearth of legislative history, have attempted a holistic approach to [the] construction of section 522(f)(2)(B). Other courts have examined the ratio of the value of the property to total capital assets to define a tool or implement. Some cases use more than one, sometimes all, of these approaches to interpretation. *In re Bulger*, 91 B.R. 129, 131–32 (Bankr.M.D.Ala.1988). *See also Heape*, 886 F.2d at 282.

As the *Bulger* court noted, the use of such diverse approaches tends to create confusing and conflicting decisions. *Bulger*, 91 B.R. at 131. Furthermore, the analyses are often skewed because of the failure to recognize that the court is searching for some type of uniform federal standard for a term of art that is generally a uniquely state law concept.

A survey of the cases indicates that a "use" test has been identified as the preferred approach by several courts. *See e.g. Heape*, 886 F.2d at 282; *In re McNutt*, 87 B.R. 84, 87 (9th Cir. BAP 1988); *Bulger*, 91 B.R. at 132. Under this approach, "it is the *use* of the property—not necessarily the size or shape—that determines whether or not it is a tool." *Bulger*, 91 B.R. at 131 (emphasis in original). It requires the debtor to actually use the property securing the creditor's claim in its trade or business and that the property be reasonably necessary to that trade or business. *In re LaFond*, 791 F.2d 623, 627 (8th Cir.1986); *In re Baker*, 139

B.R. 468, 471 (Bankr.W.D.Mo.1992); *Graettinger*, 95 B.R. at 635. *See also Heape*, 886 F.2d at 282–83; *McNutt*, 87 B.R. at 87; *Bulger*, 91 B.R. at 132–33.

■ The court concludes that this approach is correct. A use test has the advantage of not automatically excluding any particular item from potentially qualifying as a tool of the trade, so that "not only hand tools, but also things of much greater size and complexity", *Bulger*, 91 B.R. at 131, may be the subject of lien avoidance.[4] Furthermore, it has sufficient flexibility to accommodate "changes in technology and trades", *McNutt*, 87 B.R. at 87, so that it will not be rendered obsolete by evolution. *Compare Matter of Erickson*, 815 F.2d 1090 (7th Cir.1987) (discussing whether a baler is a hay loader and whether a haybine is a mower under a fifty year old state exemption statute). The requirements that debtor actually use the property in question and that it be reasonably necessary to its trade, provide sufficient rigor to prevent something from being classified as a tool of the trade just because debtor says it is.

■ To determine whether or not a particular item constitutes a tool of the trade for the purposes of § 522(f)(2)(B), the court must ask: is the item actually used by the debtor in its trade, business, or profession on a regular basis and is it reasonably necessary to that trade, business, or profession? When measured by this standard, debtor's vehicle is a tool of the trade. The debtor's employer requires him to have regular access to a vehicle in order to perform the duties of his job. Without it he would be unable to fulfill the duties expected of him. The vehicle is actually and regularly used by the debtor in his employment and it is reasonably necessary to carry out the duties expected of him by his employer. The bank's argument, that lien avoidance is available only if the debtor would lose his job or would be unable to

---

4. Under the use test, the value of the property in question becomes irrelevant to the issue of whether it constitutes a tool of debtor's trade under § 522(f)(2)(B). Since the statute has been written without a dollar limitation, the court should not treat it as if it had one. *Erickson*, 815 F.2d 1090, 1093 (7th Cir.1987). *See also In re Liming*, 797 F.2d 895, 901 (10th Cir.1986).

Nonetheless, since a lien can be avoided only to the extent that it impairs a claimed exemption, "the value of a tool on which a lien may be avoided is limited as a practical matter by the amount of the personal exemption available." *Bulger*, 91 B.R. at 132. *See also Stallsworth*, 133 B.R. at 475.

pursue his trade without the property in question, is based upon the mistaken proposition that indispensability is the test. *See Baker,* 139 B.R. at 471.

As a nonpossessory, nonpurchase-money security interest upon an exempt tool of debtor's trade, the bank's lien is avoidable under 11 U.S.C. § 522(a)(2)(B). Debtor's motion will be granted. An order doing so will be entered.