**In re William N. ZAIS and Mary P. Zais, Debtors.**

**Bankruptcy No. 96 B 51491.**

United States Bankruptcy Court, N.D. Illinois, Western Division.

Nov. 14, 1996.

Stephen G. Balsley, Chapter 7 Trustee, pro se.

Richard T. Jones, Woodstock, IL, for debtors.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Objection of the Chapter 7 Trustee, Stephen G. Balsley, to Exemptions. The parties submitted their arguments by letter.

## BACKGROUND

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on June 13, 1996. The Voluntary Petition lists a ½ seat on the Mid–American Exchange ("Exchange") as property of the estate. The ½ seat is valued at $5,300.00. Mr. Zais claims a portion of the seat as exempt in Schedule C. Specifically, he claims that $750.00 of the value of the seat is exempt under the "tools of the trade" exemption, 735 ILCS 5/12–1001(d), and an additional $1,800.00 is exempt under the "wild card" exemption, 735 ILCS 5/12–1001(b).

Mr. Zais' ½ seat is used for his employment. He is a self-employed commodity trader who trades on the Exchange. In order to trade on the Exchange, Mr. Zais is required to have a personal seat on the Exchange. The seat, however, is not a tangible item. Mr. Zais characterizes the seat as a "right to trade."

The Trustee has objected to both claims of exemptions.

## ISSUES

The pivotal issue is whether a seat on the Exchange, an intangible item, is a tool of the trade. If the seat is a tool of the trade, a second issue is whether the debtor can stack a personal property exemption on business property that constitutes a tool of the trade.

## DISCUSSION

Section 522(b) of the Bankruptcy Code entitles a debtor to exempt certain property of the estate. Illinois chose to opt out of the federal exemption scheme. 735 ILCS 5/12–1201. Therefore, a debtor is only entitled to claim the exemptions available under Illinois law. *Matter of Sullivan,* 680 F.2d 1131, 1132–38 (7th Cir.), *cert. denied,* 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). The pertinent portions of the Illinois exemption statute provide in relevant part:

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> .    .    .    .    .
>
> (b) The debtor's equity interest, not to exceed $2,000 in value, in any other property;
>
> .    .    .    .    .
>
> (d) The debtor's equity interest, not to exceed $750 in value, in any implements, professional books, or tools of the trade of the debtor;
>
> .    .    .    .    .
>
> The personal property exemptions set forth in this Section shall apply only to individuals and only to personal property that is used for personal rather than business purposes....

735 ILCS 5/12–1001.

Neither Illinois law, nor the Illinois legislature, has defined "tools of the trade." The limited amount of case law does not provide the Court with compelling guidance. For example, one bankruptcy court looking to Illinois exemption law determined that an automobile used to commute to and from work is not a tool of the trade. *In re Montano,* 98 B.R. 390, 391 (Bankr.N.D.Ill.1989). Thus, we start from scratch.

\*    \*    \*    \*    \*    \*

■  The Debtors urge the Court to examine the purpose for which the seat is used rather than its physical components. Several courts rely on the "use" test to determine whether an item is a "tool of the trade" for purposes of Section 522(f)(2)(B). *Matter of Shipman,* 167 B.R. 527, 530 (Bankr.N.D.Ind. 1994) (citations omitted).[1] The "use" test

---

1. The *Shipman* court noted the several ways courts have interpreted "tools of the trade".

examines the use of the property, not necessarily the size or shape. *Id.* (citation omitted).[2] "It requires the debtor to actually use the property securing the creditor's claim in its trade or business and that the property be reasonably necessary to that trade or business." *Id.* (citations omitted). This test provides a flexibility that recognizes "trades and uses of implements change and evolve; prior definitions and concepts should be consistent with changes in technology and trades." *McNutt,* 87 B.R. at 87. The questions are whether the item is actually used by the debtor in its trade, business or profession on a regular basis, and whether it is reasonably necessary to that trade, business, or profession. *Shipman,* 167 B.R. at 530.

\*     \*     \*     \*     \*     \*

Philosophically, an application of the "use" test could lead to the conclusion that the seat, albeit intangible, is a tool of the trade. Mr. Zais is a commodity trader. Since the seat is required to trade on the Exchange, it is reasonably necessary to that type of profession. Without the seat Mr. Zais can no longer continue his trade. Arguably, the seat should be considered a tool of the trade.

\*     \*     \*     \*     \*     \*

Nevertheless, there are legitimate concerns that the Illinois legislature did not contemplate so far-reaching an application of the exemption statute as embodied in the "use" test. The *Shipman* court's focus on the "use" test is explained, in part, because the Indiana exemption statute did not have

[S]ome courts have refused to regard certain kinds of property as tools or implements without regard to use. Some courts have said that only property of limited value may be a tool or implement under section 522(f)(2)(B). Some courts, faced with the dearth of legislative history, have attempted a holistic approach to [the] construction of section 522(f)(2)(B). Other courts have examined the ratio of the value of the property to total capital assets to define a tool or implement. Some cases use more than one, sometimes all, of these approaches to interpretation.

*Shipman,* 167 B.R. at 530 (quoting *In re Bulger,* 91 B.R. 129, 131–32 (Bankr.M.D.Ala.1988)).

**2.** The Court would be remiss if it did not mention that no authority, at either the state or federal level, holds that an intangible item is or is not a tool of the trade. The courts incorporating the

anything remotely resembling a tool of the trade exemption for more than 140 years. *Shipman,* 167 B.R. at 529. Here, Illinois law expressly provides for a tool of the trade exemption. Furthermore, Illinois' tool of the trade exemption closely resembles that of the federal exemption contained in Section 522(d)(6) of the Bankruptcy Code.[3] Thus, reference to authority provided by the Seventh Circuit would be appropriate.

The Seventh Circuit has established that Congress intended the phrase "tools of the trade" to be narrowly construed. *Montano,* 98 B.R. at 391 (citing *Matter of Patterson,* 825 F.2d 1140, 1146 (7th Cir.1987)).

In *Patterson,* the debtors urged the court to adopt a broad definition of tools of the trade by pointing out that both tractors and cows are instrumentalities for turning raw materials into saleable products. *Patterson,* 825 F.2d at 1146.[4] Cognizant of the debtors' definition, the Seventh Circuit opined that

[A] businessman's secretary is by the same token a tool of the trade; indeed all capital and labor inputs are tools in this sense; the only things a business buys that are not tools of its trade are raw materials. If "tools" is to be given so capricious a definition as the [debtors] urge, then the exemption is not for the tools of a person's trade but for the capital assets of his business, ... The broad definition, moreover, makes it hard to explain the statute's explicit mention of so petty an item as "professional books," which rarely (though

"use" test are dealing with tangible items. *See e.g. In re Parrotte,* 22 F.3d 472 (2d Cir.1994) (bulls); *In re Heape,* 886 F.2d 280 (10th Cir. 1989) (breeding stock); *Shipman,* 167 B.R. 527 (pick-up truck); *Bulger,* 91 B.R. 129 (hauling truck); *In re McNutt,* 87 B.R. 84 (9th Cir. BAP 1988) (truck); *In re Dubrock,* 5 B.R. 353, 354–55 (Bankr.W.D.Ky.1980) (automobile).

**3.** Section 522(d)(6) states

The debtor's aggregate interest, not to exceed $1,500 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of a debtor.

11 U.S.C. § 522(d)(6).

**4.** The debtors in *Patterson,* Wisconsin residents, chose to claim their exemptions under the federal exemption scheme, specifically Section 522(d)(6).

sometimes) will have a substantial value ... But if, for example, a printing proprietorship goes into bankruptcy, what sense would it make to allow the owner to exempt $750 from the auction of a million dollar printing press? *The purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade.* Although as a matter of semantics farm "implements" could be thought to cover machinery and vehicles as well as hand tools, this would be an incongruous interpretation. There would be no point in allowing a debtor to exempt $750 worth of equipment that might have a market value of many thousands of dollars. He would have to sell it anyway, and probably he could not replace it; certainly he could not continue to use it in his trade.

*Patterson,* 825 F.2d at 1146 [emphasis added].

■ The insight provided by the Seventh Circuit propels the Court to conclude that the seat on the Exchange, whether intangible or not, is not a "tool of the trade" within the meaning of the Illinois exemption statute.[5] Similar to the bankruptcy printing proprietor seeking to exempt the printing press, no purpose would be served by permitting Mr. Zais to claim a $750.00 exemption for an item valued at $5,300.00.[6] The limited dollar amount of the exemption sheds light on the Illinois legislature's intent to the ascribed meaning of the phrase "tool of the

trade." Tools of modest value, rather than capital assets, appear to be the items sought to be characterized as tools of the trade.

Another reason the Court is compelled to reach this result rests in the theory that the courts are not legislators. *See e.g., In re Allard,* 196 B.R. 402, 408 n. 3 (citing *Deans v. O'Donnell,* 692 F.2d 968, 971 (4th Cir.1982)) (courts are asked to construe and apply statutes, not to legislate). As the *Shipman* case illustrates, Indiana changed its exemption statute to accommodate a changing society. "At least as early as 1851, Indiana had abandoned the practice of granting exemptions in specific items of property in favor of the "modern innovation" of exempting a particular dollar amount of property ... being determined, not by the property's use, but by its classification as real, tangible or intangible." *Shipman,* 167 B.R. at 529 (citations omitted). No such change has occurred in Illinois. If the Court embraced a liberal interpretation of the "tools of the trade" exemption, it would be intruding on the function of the Illinois legislators.

The Court concludes that Mr. Zais' seat on the Mid–American Exchange is not a tool of the trade within the meaning of 735 ILCS 5/12–1001(d). It is, therefore, unnecessary to delve into the stacking issue raised by the Trustee. The Debtors conceded that the use of the "wild card" exemption would be appropriate only in the event the Court found that the seat is a tool of the trade.[7]

---

5. In examining the language of the "tools of the trade" exemption provision, application of the rules of statutory construction as established under Illinois courts is appropriate. *See Matter of Barker,* 768 F.2d 191 (7th Cir.1985). One of the canons of statutory construction is the presumption that words are used with their ordinary meanings. *Daley v. Datacom Systems Corp.,* 146 Ill.2d 1, 15, 165 Ill.Dec. 655, 661, 585 N.E.2d 51, 57 (1991); *People v. Hicks,* 101 Ill.2d 366, 371, 78 Ill.Dec. 354, 356, 462 N.E.2d 473, 475 (1984).

The Webster's College Dictionary definitions of the term "tool" include "an implement, esp. one held in the hand, as a hammer, saw, or file, for performing or facilitating mechanical operations," to "anything used as a means of accomplishing a task or purpose." Incorporated into the definitions of "tool" are definitions for the terms "implement" and "instrument." An implement is "any tool or contrivance designed or used for a particular purpose." An instrument is "anything used in doing certain work or produc-

ing a certain result, esp. such as requires delicacy, accuracy, or precision." *Webster's College Dictionary,* 1405 (1991).

6. The Court recognizes that Mr. Zais seeks a further exemption by application of the Illinois "wild card" exemption. The Court, however, finds that the possibility of stacking exemptions should not encroach upon the analysis necessary to initially determine if an item is a "tool of the trade."

7. This Court's decision in *In re King,* 153 B.R. 229 (Bankr.N.D.Ill.1993) resolves the question of whether a debtor can claim a personal property exemption for an item used in a debtor's employment. In *King,* the court stated that "[t]ools of the trade are exempt, subject to a dollar limit, under both Subsections (d) and (b), but personal property that is used for business purposes and that does not constitute a tool of the trade, is not

The Objection of the Chapter 7 Trustee, Stephen G. Balsley, to Exemptions should be sustained. Trustee Balsley should submit an Order accordingly.

exemptible." *King,* 153 B.R. at 231; *see also In re Allman,* 58 B.R. 790, 791–93 (Bankr.C.D.Ill. 1986). Based on this analysis, if the seat were a tool of the trade, the use of the "wild card" exemption to claim an additional $1,800.00 would be appropriate.