In re Jack J. STALLSWORTH, Debtor.

Bankruptcy No. IP90–680–RWV–7.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

April 17, 1991.

Pequita Jay Buis, Buis Conn & Associates, Indianapolis, Ind., for debtor.

Timothy L. Brennan, Brennan & Brennan, Indianapolis, Ind., for Avco.

ORDER GRANTING DEBTOR'S MOTION TO SET ASIDE ORDER SUSTAINING OBJECTION TO MOTION TO AVOID LIEN, GRANTING DEBTOR'S MOTION TO AVOID AVCO'S LIEN, AND DENYING AVCO'S MOTION TO MODIFY STAY

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the Motion to Set Aside Order Sustaining Objection to Motion to Avoid Lien, filed by the Debtor on November 30, 1990 ("the Debtor's Motion"), and on the Motion to Dismiss, or in the Alternative, Motion to Reset Motion to Modify Stay or for Ade-

quate Protection, filed by Avco Financial Services ("Avco") on January 10, 1991 ("Avco's Motion"). The matters were heard on February 7, 1991. The Court now grants the Debtor's Motion and his earlier Motion to Avoid Lien, and denies Avco's Motion.

### Findings of Fact

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on January 30, 1990. The case was converted to one under Chapter 7 on August 2, 1990. His statement of financial affairs indicates that the Debtor is an ironworker and as of September 10, 1990, he was on disability leave.

Avco holds a nonpurchase-money security interest in the Debtor's 1984 Ford truck ("the Truck"), which the Debtor values at $2600.00 and claims as exempt under Ind. Code 34–2–28–1. The Truck secures a debt of over $5000.00.

On May 16, 1990, Avco filed a Motion to Modify Stay or in the Alternative for Adequate Protection, alleging among other things that Avco was unable to verify that the Truck was insured. This matter was heard on June 12, 1990, and the Debtor was to provide Avco with proof of insurance within 48 hours of the hearing.

On September 7, 1990, the Debtor filed a statement of intention indicating his intent to reaffirm the debt to Avco. However, an amended statement of intention was filed on October 23, 1990, indicating an intent to claim the Truck as exempt.

On September 25, 1990, the Debtor moved to avoid Avco's lien under 11 U.S.C. section 522(f). On October 1, 1990, Avco filed a response, asking the Court to deny the Motion to Avoid Lien, recognize Avco's security interest in the Truck, and deny the Debtor's claim to exempt the Truck. The matter was set for hearing on November 14, 1990, but neither the Debtor nor his counsel appeared. Therefore, by order of November 26, 1990, the Court sustained Avco's objection to the Motion to Avoid Lien.

The Debtor's Motion asserts that neither the Debtor nor his counsel received notice of the November 14, 1990, hearing. The Court found counsel's representations on this matter at the February 7, 1991, hearing to be credible, and finds that the order sustaining Avco's objection should be set aside if the Debtor can support his motion to avoid Avco's lien.

In Avco's Motion, Avco asserts, among other things, that it retains a lien on the Truck, that the Debtor has failed to provide proof of insurance on the Truck, and that delay by the Debtor has prejudiced Avco.

At the hearing, Avco's counsel stated that the Debtor has made no payment to Avco since bankruptcy, that Avco believes the Debtor is continuing to use the Truck, that the Truck is depreciating in value and that, to Avco's knowledge, the Truck is not insured.

The Debtor testified that he used the Truck as collateral for a loan from Avco to buy a boat. He is a steelworker and uses the Truck to carry his tools. He works all over the state, and within his "local boundaries", he must carry his own tools. He has a large amount of tools and could not carry them in an automobile. He testified that he had made payments on the loan until Avco repossessed the boat and sold it. He became disabled and filled out paperwork for disability payments on the loan. He testified that the Truck is currently insured with State Farm Insurance until April 1991.

On cross examination, the Debtor testified that he made no payments on debt secured by the Truck since filing for bankruptcy. He filled out one set of paperwork for disability insurance payments to Avco, and denied receiving monthly forms from Avco requiring a doctor's signature. He took out insurance on the Truck in October, 1990, when he went back to work, and prior to that, it was not insured. He drives the Truck about 1000 miles a month. He sent a copy of proof of insurance to Avco, but it apparently was lost in the mail.

On redirect, the Debtor testified that his disability was caused by a traffic accident on April 13, 1989 (apparently meaning 1990). The doctor ordered him not to work

or drive for a while, and he did not drive the Truck during the time it was not insured. The Court finds the Debtor's testimony to be credible, and essentially uncontradicted.

At the hearing, the Court modified the automatic stay to allow Avco to commence a replevin action, pending the Court's determination of the lien avoidance issue.

### Conclusions of Law

The Court has jurisdiction over this matter. 28 U.S.C. section 157(b)(2)(G) and (K).

■ An Indiana debtor may claim as exempt up to $4000.00 in non-homestead real estate or tangible, personal property. *See* 11 U.S.C. section 522(b)(2); Ind.Code 34–2–28–1(a)(2). Indiana has no specific exemption for tools of the trade.

A debtor may avoid the fixing of a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled if the lien is a nonpossessory nonpurchase-money security interest in household goods and furnishings, wearing apparel, appliances, books, animals, crops, musical instruments or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor, 11 U.S.C. section 522(f)(2)(A), or in *"implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor"* (for brevity, "tools of the trade"), section 522(f)(2)(B), or professionally prescribed health aids of the debtor or a dependent of the debtor, section 522(f)(2)(C). (emphasis added).

The Debtor argues that although Indiana has no exemption for tools of the trade, he may claim the Truck as exempt tangible personal property. The Court agrees, finding that Avco has stated no basis for disallowing such a claim of exemption.

The Debtor then argues that having established the Truck as exempt under state law, he may then avoid Avco's nonpossessory, nonpurchase-money security interest if the Truck is a tool of the trade within the meaning of 522(f)(2)(B), contending that avoiding the lien on the Truck as a tool of the trade does not require that state law specifically exempt tools of the trade, but only that the Truck fall within some category of exempt property.

■ The case law cited by the Debtor includes *In re Bulger*, 91 B.R. 129 (Bankr. M.D.Ala.1988), in which the debtor was permitted to avoid a lien on his pulpwood truck. The truck was exempt as personal property under state law and was held to be a tool of the debtor's trade for lien avoidance purposes. Also cited is *In re Graettinger*, 95 B.R. 632 (Bankr.N.D.Iowa 1988), in which the debtor was allowed to avoid a lien on his pick-up truck despite the lack of a specific state law exemption for tools of the trade. That court held that although a state law may determine what property may be claimed as exempt, "federal law determines whether the lien on the property is subject to avoidance." *Id.* at 634. Authority from the Northern District of Indiana also supports to the Debtor, the bankruptcy court there having allowed debtors who were farmers to use 522(f)(2)(B) to avoid a lien on farm equipment exempted as tangible personal property under Indiana's exemption statute. *See In re Decker*, 34 B.R. 640 (Bankr. N.D.Ind.1983). In that case, however, the creditor did not dispute that the equipment at issue constituted tools of the trade for lien avoidance purposes, *id.* at 641 (the issue was whether the debtors were farmers), and two intervening Seventh Circuit cases require further analysis of that uncontested premise.

In *In re Patterson*, 825 F.2d 1140, 1146 (7th Cir.1987), each of the debtors (a married couple) claimed the value of some cattle and a tractor as exempt under the federal exemptions for tools of the trade up to $750.00 under section 522(d)(6), and the "wild card" exemption of $400.00 plus $7500.00 for their unused homestead exemption under section 522(d)(5) (that limit has since been lowered), for a total of $17,300.00 for the couple. *See* 825 F.2d at 1141–42. They then contended that since the cattle and the tractor were tools of their trade (i.e. farming), they could avoid their creditor's nonpurchase-money securi-

ty interest in them under section 522(f)(2)(B).

The court found that the items could be claimed as exempt under the wild card exemption, for a total of $15,800.00, but not under the exemption for tools of the trade. Given the $750.00 limit on the tools of the trade exemption, the court concluded that Congress did not intend an expansive definition of that term, but rather meant the term to encompass only items such as personal hand tools of modest value, as opposed to major capital assets. *See id.* at 1146–47. Although admitting that the question as regards to the tractor was a close one (at least closer than as regards to the cows), the court concluded that since the tractor was not a modest implement, like a rake, but an expensive piece of machinery and a principal capital asset of a small farm, it could not be classified as a tool of the trade within the meaning of 522(d)(6). *Id.* at 1147. Since cows and tractors were not tools of the trade for the purpose of exemption, the court concluded that they were not tools of the trade for the purpose of lien avoidance under 522(f)(2)(B) either. *See id.* at 1148. Thus, although the debtors could claim an exemption in the cattle and tractor under the wild card exemption, they could not avoid the creditor's lien on the items because they were not tools of the trade. *Id.*

The Seventh Circuit had occasion to revisit *Patterson's* underpinnings in a case in which debtors were attempting to avoid a lien on property they claimed as exempt under a *state* law exemption for tools of the trade. *See In re Thompson,* 867 F.2d 416 (7th Cir.1989). The debtors in that case claimed over $8000.00 in farm equipment, including two tractors and a combine, as exempt under Wisconsin's exemption statute, which specifically included such items as tools of the trade and which had no overall limit (although the amounts allowed for certain types of items had limits). *See id.* at 418. They then moved to avoid a creditor's nonpurchase-money security interest in the items under section 522(f)(2)(B). *Id.* Their creditor claimed that despite Wisconsin's more generous definition of tools of the trade for exemp-

tion purposes, the narrow *federal* definition for lien avoidance purposes established by *Patterson* precluded the debtors from avoiding its lien on large pieces of machinery. *Id.* at 418–419.

The court allowed lien avoidance under section 522(f)(2)(B), stating that the principal question in *Patterson* was the definition of tools of the trade under 522(d)(6), and noted that *Patterson* allowed that the same language in 522(f)(2)(B) may not necessarily have the same meaning. *See Thompson,* 867 F.2d at 417–18. The two cases together, therefore, stand for the proposition that the term tools of the trade in section 522(f)(2)(B) takes on the meaning of the law providing the exemption. Hence, in *Patterson* it took on the narrow meaning under the federal exemption list and in *Thompson* it took on the broader meaning under the Wisconsin exemption statute.

The Debtor's situation is different from that in *Patterson,* since the Debtor is claiming his exemption under state law rather than under the list in section 522(d) (as he must, since Indiana has opted out of the federal list, *see* Ind.Code 34–2–28–0.5.), and it is different from *Thompson,* since the state statute the Debtor invokes provides no specific exemption for tools of the trade. This Court must decide what "tools of the trade" in section 522(f)(2)(B) means when the state exemption statute provides no definition and the federal list is inapplicable.

Though the current statute is silent on the issue, Indiana case law and prior statutes provide guidance on what types of items the exemption statute is meant to protect. In *Spangler v. Bolinger,* 216 Ind. 28, 22 N.E.2d 983 (1939), the Indiana Supreme Court, in deciding that the Indiana exemption statute did not unconstitutionally discriminate against certain classes of debtors based on the type of property they owned, discussed the history and purpose of exemptions in Indiana. At the time the 1851 Constitution was adopted, the law exempted property of householders of a value of $125.00. Prior to that, exemptions had

been in terms of specific types of property. The statute of 1843, for example, exempted necessary wearing apparel, the family Bible, school books, certain livestock, "household and kitchen furniture, not to exceed in value fifteen dollars, one chopping axe, one plough, one weeding hoe," certain spinning and weaving equipment, two months provisions, and arms and equipment for military service, the total not to exceed $100.00 in value. 22 N.E.2d at 984, *quoting* Revised Statutes of Indiana 1843, ch. 40, sections 376, 377. The court noted that exempting general categories of property rather than listing specific items is a "modern innovation". 22 N.E.2d at 985. On the policy underlying exemption statutes, the court quoted favorably an Ohio case, which stated in part:

> Generally, if not universally, legislation of this character is based upon the ground of enlightened public policy.... So, in some instances, are tools of workmen exempt; this on the ground that to take away his implements of labor is to take away his capacity to maintain himself and those dependent upon him, and thus tend to make them a burden upon society.

22 N.E.2d at 984–85, *quoting Williams v. Donough*, 65 Ohio St. 499, 63 N.E. 84, 85 (1902).

The *Spangler* case and the history it cites evidence a favorable disposition toward exempting tools of the trade. Items from Indiana's last exemption list, when most inhabitants engaged in farming to some degree, included not just small farm tools as an axe and a hoe, but also "a plough", a rather large implement even then. The exemption for this farming equipment had no limit in value (except the $100.00 total value limit), in contrast to the $15.00 limit for certain household items. Following the reasoning of *In re Erickson*, 815 F.2d 1090 (7th Cir.1987), in which the debtors were allowed to exempt enhanced modern versions of the obsolete items listed in the Wisconsin statute, the Court must look at today's modern plow to determine what the present day scope of the old Indiana list would be. Such a plow could

by no means be considered a "personal hand tool of modest value", *see Patterson*, 825 F.2d at 1146, and it would, unless quite depreciated, be worth more than the $750.00 ceiling that convinced the *Patterson* court that larger equipment was not included in the section 522(d)(6) federal exemption. While the $4000.00 limit on exemption of tangible personal property precludes a debtor from exempting most major capital assets, that limit allows a debtor to exempt some modest pieces of larger equipment along with hand tools.

This Court can reasonably infer that one reason Indiana changed from exempting lists of specific items to broader categories of items was the move from a predominantly agrarian economy to a more diversified one. By providing a general exemption for tangible personal property, debtors can exempt tools of their trade, within the $4000.00 limit, whatever their trade might be. The Court concludes that Indiana's abandonment of lists in favor of categories was intended, at least in part, to enhance, rather than diminish, Indiana debtors' ability to exempt tools of the trade.

To recap then, the meaning of "tools of the trade" for lien avoidance under 522(f)(2)(B) depends on the character of that term under the law which provides the exemption. Prior to Indiana's adoption of exemption by general categories, tools of the state's predominant trade were not limited to small hand tools, but included a major piece of equipment. Replacement of lists with categories was intended to enhance debtors' ability to exempt tools of the trade. The Court therefore concludes that under Indiana law, tools of the trade subject to exemption are not limited to small hand tools, but may include larger equipment used in a debtor's trade.

The uncontradicted evidence shows that the Truck is used not just for transporting the Debtor to and from work, but is used for transporting the Debtor's tools to and from job sites, a necessary part of his trade. Since the Debtor's Truck is reasonably necessary to his trade, and since the Truck is subject to exemption under Indiana law, the Court concludes that it is a

tool of the trade within the meaning of section 522(f)(2)(B), and that the Debtor is entitled to avoid Avco's lien on it. Since Avco's lien is avoided, Avco has no further interest in the Truck, and the Court must deny the relief Avco seeks.

The Court therefore:

1. Grants the Debtor's Motion to Set Aside Order Sustaining Objection to Motion to Avoid Lien,

2. Grants the Debtor's Motion to Avoid Avco's lien on the Truck, and

3. Denies Avco's Motion.